THE WARREN MANUFACTURING COMPANY *vs.* THE NOR-
WICH BLEACHING, DYEING & PRINTING COMPANY.

New London Co., Oct. T., 1887. PARK, C. J., CARPENTER, PARDEE,
LOOMIS and BEARDSLEY, Js.

The Warren Manufacturing Company agreed with *C* to deliver for him at
the bleachery of the defendants certain cotton cloths, the parties sign-
ing the following writing:—"Sold to *C* for account of Warren Co.
7500 pieces of browns, four months' credit, to be delivered as follows:
(stating times and quantities of delivery, covering six months.) It is
hereby agreed that *C* shall not at any time owe for more than 2500
pieces and that all goods sent to be finished shall be sent for account
of the Warren Co.; *C* to give finishing instructions and pay finishing
bills, but not to remove goods to an amount exceeding the above 2500
pieces at any one time." After the deliveries commenced *C* took away
2500 pieces and had not paid for them. Held that the title to all the
remaining pieces in the bleachery was in the Warren Co. and had not
passed to *C*.

And held not to affect the case that the goods had been charged on the
company's books as if sold on the day they were sent to the bleachery,
and an invoice as of goods then sold had been sent to *C*, as the sale
was to date, in respect to the credit given, from the time of the deliv-
ery at the bleachery.

The delivery of personal property under an agreement that the person re-
ceiving it shall become the owner on paying for it, and not till then,
does not vest the title in him.

Argued October 18th—decided November 23d, 1887.

ACTION to recover for a quantity of cotton cloths in the
hands of the defendants and which they refused to deliver
up on demand ; brought to the Superior Court in New Lon-
don County, and tried to the court before *Torrance, J.* The
court found the following facts :—

The Warren Manufacturing Company, the plaintiff, was a
manufacturer of cotton cloths. The principal defendant
was a bleaching and dyeing company in Norwich in this
state. F. M. R. Casey was in the business of buying from
manufacturers cotton goods in the brown, having them fin-
ished and selling them. For some time before January, 1884,
Casey had been sending to the bleaching company cloths

bought by him of different manufacturers, to be finished for him, he paying the regular price of such work at the end of thirty days after the goods were finished. It usually takes from two weeks to sixty days to finish such goods in a bleachery.

Casey applied to the plaintiff to purchase a quantity of cotton goods to be finished by him, and on the 22d of January, 1884, the following written agreement was made by the plaintiff, through its agent, D. O. Tatum, and Casey:—

" NEW YORK, January 22, 1884. Sold to F. M. R. Casey, for acct. Warren Mfg. Co., 7500 ps. Warren Co.'s 40 inch 60x68 browns to weigh about 5 yards pr. lb., same as last, and in double cuts, at $5\frac{1}{4}$ c. pr. yd., 4 mos. credit. F. O. B. To be delivered as follows :—February, 1000 ps., in two deliveries ; March, 1500 ps., do.; April, 1500 ps., do.; May, 1500 ps., do.; June, 1000 ps., do.; July, 1000 ps., do. Warren Co. to have option, until May 1st, of accepting or rejecting 1000 ps. for August. Strikes, lockouts and other unavoidable casualties excepted. It is hereby agreed that F. M. R. Casey shall not at any time owe for more than 2500 ps., say about $7,500, and that all goods sent to be finished shall be sent for account of the Warren Mfg. Co. Mr. Casey to give finishing instructions, and pay finishing bills, but not to remove goods to an amount exceeding the above 2500 ps. at any one time. Shipping directions to follow. D. O. TATUM."

" Accepted by F. M. R. CASEY."

Soon after January 22d, 1884, Casey informed the bleaching company that he had bought certain cloths of the Warren company, which would be delivered to him from time to time, and that he wished the bleaching company to receive and finish for him such of the cloths as he might send to it, on the terms upon which it had been accustomed to do work for him. Casey did not at any time inform the bleaching company of the terms of his contract with the Warren company, nor did the bleaching company know of the existence of any such contract till after the 25th of July, 1884.

On the 29th of January, 1884, Casey instructed the War-

ren company to ship, until further orders from him, the cloths to be delivered under the contract to the bleaching company; and on the 30th of January, 1884, the Warren company sent Casey a letter promising so to send them till further directions.

In accordance with this order cloths, made under the contract, were shipped from Warren, Rhode Island, to the bleaching company, and by the bleaching company shipped to Casey, on his orders from time to time, the letter of the Warren company, sent upon each shipment, advising the bleaching company of the shipment and that the goods were to be finished on account of the Warren company, and requesting that they notify the Warren company of each shipment to Casey.

When the goods were placed on board the cars at Warren, the Warren company sent an invoice of them to Casey, as of goods bought by him and shipped by him to the bleaching company; also, a bill of lading was sent of each shipment by the Warren company to Casey. They also at that time, charged him upon their books as for goods sold to him, and the four months' credit, provided for in the contract, began to run from the shipment. No other delivery was made of the goods to Casey than such delivery on board the cars.

After such delivery the Warren company did not in fact exercise or attempt to exercise any control or dominion of any kind over any of the goods, except as hereinafter stated; but Casey, with the full knowledge of the company, exercised full dominion over them at all times. The price made by the bleaching company for finishing goods for Casey included the freight from the manufactory to it, in accordance with the custom of the trade. The freight was paid by the bleaching company, and no separate charge to Casey was made therefor. He gave the bleaching company all instructions as to the manner in which and time when the goods should be finished; he sold the goods as his own, and ordered the bleaching company to pack and ship them to his vendees as he pleased. He did all this with the full

knowledge of the Warren company, and not as its agent, but acting for himself. On receipt of his invoices from the Warren company, Casey sent to the bleaching company invoices in his own name, with directions as to the finishing.

There was no agreement on the part of Casey to send, or on the part of the bleaching company to receive and finish, any specified quantity of the cloth, whether of the Warren company or other makers. Both parties were at liberty to stop at any time with any shipment. The shipments were distinct and separate, but there was an expectation on both sides that cloth would continue to be sent and finished until either party should see fit to stop.

On or about the 14th of July, 1884, Casey became utterly insolvent and suddenly disappeared, and has not since been heard from. On the 25th of July the Warren company sent to the bleaching company the following telegram: " Hold all goods shipped by us to you subject to our order." And on the 29th of July, 1884, the Warren company sent the following letter to the bleaching company, which was received on the 30th of July, 1884:

" WARREN, R. I., July 29, 1884.

" NORWICH BLEACHERY, Norwich, Conn. Dear Sirs:— We understand that you are holding all goods shipped you by us for our account and as belonging to us alone. Please continue to hold them for our account until further instructions, and oblige us. Please advise us. Yours truly,

" JOHN WATERMAN, *Tr.*"

To this letter the bleaching company replied on the next day as follows:

" NORWICH, CONN., 7—30th, 1884.

" MR. JOHN WATERMAN, *Treas.* Dear Sir:—Yours of 29th at hand. In reply say that we have been pressing Mr. Casey to pay our account of finishing. As he did not respond as he promised, we look to the goods in our hands for our bills of finishing and hold them, as we have the right to do, by the laws of this state. What is owing us is on goods received from your company, with the exception of one case, the writer thinks. Yesterday we were served a

garnishee process by the Attawaugan Co., also by Converse, Stanton & Davis, Boston. This compels us to hold the goods until our bills are paid, and until you establish your claim to the goods.   Yours, truly,        M. PIERCE."

On the 25th of July, 1884, there was in the possession of the bleaching company of the cloths in question twenty-seven cases of foulards and four cases of printed goods finished according to Casey's orders, and worth about $5,000 ; and there was then due the company for work upon these goods, $1,184.94.   There was also due the bleaching company from Casey, at that date, the following sums :—for finishing goods for Casey from the Warren company other than the cases above mentioned as on hand, $2,214.85, and for finishing goods for Casey from other concerns, $1,352.65, making in all $4,752.44.

Casey paid to the Warren company the amounts following:—May 23d, 1884, $1,492.69 ; June 11th, 1884, $1,391.24; and no more.   On the 25th of July, 1884, the Warren company claimed that Casey owed it on account of goods shipped, the sum of $7,500, of which about $4,500 was then due, and the remainder would become due at the expiration of the four months' credit.

On the 29th of July, 1884, the Attawaugan Company, brought into the present suit as a defendant, upon a writ against Casey attached the goods in the possession of the bleaching company, and made that company a garnishee in the suit.   The Attawaugan Company subsequently recovered judgment in the suit, procured execution thereon, made demand on the execution, which was returned unsatisfied, and then brought an action of *scire facias* against the bleaching company, which is still pending.

The bleaching company did not notify the plaintiff of shipments to Casey of June 9th and June 10th, 1884, until June 15th, 1884.   The plaintiff immediately called upon Casey, in New York City, and requested him to return all goods of its manufacture in his possession, in excess of 2500 pieces; and on the 26th of June, 1884, Casey complied, as far as possible, with the request, and executed and deliv-

ered to the Warren company a writing, containing a schedule of the goods, being thirty-one cases, with the following appended:—" Memo. of thirty-one cases rubber ginghams held in store No. 6 H. R. R. Depot, subject to the order of John Waterman, Treas. Storage receipt herewith attached. These goods are held under an agreement with F. M. R. Casey, dated Jan. 22, '84, and as the amount specified under that agreement is liquidated the goods to be re-transferred to said Casey. F. M. R. CASEY." The goods mentioned therein were part of the goods delivered under the contract. On the 29th of July the Warren company brought suit against Casey in New York City, and attached, and subsequently sold, as Casey's, some of the goods delivered him under the contract and other goods of Casey's. The net proceeds of the suit amounted to $4,593.85.

Some time in August, 1884, the Warren company made demand of the bleaching company for all goods in its possession which had been made by the Warren company for Casey under the contract, and then informed the bleaching company of the terms of the contract, which was the first knowledge the latter company had of the existence of the contract. The Attawaugan Company did not know of the existence of the contract until some two months after the 29th of July, 1884.

Upon the trial the plaintiff offered in evidence certain written correspondence between itself and Casey, and also certain conversations between Casey and the plaintiff, had and written both before and after the making of the contract, in explanation of its terms and as showing how the parties understood it and certain terms and provisions of it. To this evidence, offered for such a purpose, the defendants objected, and the court sustained the objection and excluded the evidence.

Upon these facts the plaintiff claimed:—

1st. That under the contract the goods in controversy had never been delivered to Casey. 2d. That the title to the goods in question never passed from the plaintiff. 3d. That if Casey took any title it was only a conditional one, and

the defendants were not entitled to the goods until they had paid or tendered to the plaintiff the value of the goods in the brown. 4th. That as vendors of the goods the plaintiff had a lien upon them prior to the claim of the Attawaugan Company.

The bleaching company claimed a lien upon the goods for the whole amount due it from Casey, $4,752.44, with interest thereon.

The Attawaugan Company claimed that the goods were the property of Casey, and should be delivered up to it on payment of the lien of the bleaching company for finishing those specific goods, or that they should be sold, and the proceeds, after deducting expenses and the amount of the lien, turned over to it.

The court overruled the claims of the plaintiff, and held that the goods, when attached, were Casey's goods, and that the bleaching company had a lien thereon for $1,184.94, with interest from August 1st, 1884, and rendered judgment for the defendants. The plaintiff appealed.

*C. E. Perkins* and *J. M. Thayer*, for the appellant.

*J. Halsey* and *S. Lucas*, for the appellees.

BEARDSLEY, J. The Superior Court found that the title to the goods in question in this case, which were attached as the property of Casey by the Attawaugan Company, was in him at the time of the attachment, and rendered judgment for the defendant. The question is whether such finding is justified by the facts found. It is found that the contract between the plaintiff and Casey, though importing on its face a present sale of existing property, was in reality a contract for the future sale of goods to be manufactured by the plaintiffs. This is immaterial, however, as the goods were afterwards made, and the contract then applied to them as it would have done if they had been made before it was entered into.

The first question is as to the intention of the parties as expressed by the contract.

That this intention is to be derived from a reasonable construction of all its language, looking to its subject matter, the situation of the parties, and their object in making it, is elementary law.

The plaintiffs were manufacturers of cotton cloths. Casey was engaged in the business of buying such goods and re-selling them after having them finished at a bleachery.

Let us suppose that Casey proposes to the plaintiffs to buy of them their goods to the amount of $16,500 on four months' credit. The plaintiffs are not willing to give him the credit, but are willing to sell him goods to the amount of $7,500 on four months' credit. Under such circumstances it is not improbable that the parties might come together, upon an arrangement that the entire quantity of goods which Casey wished to buy should be delivered to a bleachery, to be finished as Casey desired and under his direction; but at no time to have the title to, or the right to remove from the bleachery, more than a certain number of pieces of the goods, the price of which was $7,500, until he paid for those he removed, the goods to be sent to the bleachery by instalments as they were manufactured, and the four months' credit to commence running when they were so sent.

In this way Casey might have all the goods ready for market with as little delay as if he owned them, and the plaintiffs might have all the advantage of a present sale if Casey performed his contract, and, if he did not, would have the goods, in excess of those sold to Casey, increased in value by the labor bestowed upon them at the bleachery. Such was evidently the situation of the parties and the object to be accomplished, and such in substance at least is the contract we are considering.

The goods were to be delivered to the bleachery. Casey was to have the direction of the finishing and the right to take them away, subject to the provision that he should not

remove more than twenty-five hundred pieces which he had not paid for.

The authority given to him to direct as to the finishing of the goods would be senseless if he was the owner of them, and the expressions shall not "owe for" or "remove," are equivalent to an affirmation by the parties that the title to the goods which Casey was not to owe for or remove should continue in the plaintiff.

If Casey had the title to the goods he would owe for them, and would have the right to remove them.

The defense claims that by the contract a delivery of the goods at the bleachery was to be a delivery of them to Casey. If this were so we do not see how the plaintiff would be prevented by it from enforcing his reserved right of property.

The well settled law of this state is, that the delivery of the possession of personal property to one, under a contract that he shall not become the owner of it until he has paid for it, does not vest the title in him. *Lewis* v. *McCabe*, 49 Conn., 140, and cases there cited.

But the language of the contract is wholly inconsistent with the claim of the defendants in this respect.

The goods were to be sent to the bleachery *on account of the plaintiff*, and Casey's right of possession, as we have seen, is expressly limited.

If the rights of the parties therefore are to be governed by the contract, it seems clear that the title to the thirty-one cases of goods was in the plaintiff when they were attached by the Attawaugan Company, it appearing that Casey then owed for at least twenty-five hundred pieces which he had removed.

The parties by their dealings under the contract gave it a practical construction fully in accord with that which we have given it. Seven thousand of the seventy-five hundred pieces contracted for had been delivered in various shipments before the 14th of July, when Casey became insolvent and disappeared. A letter from the plaintiff to the bleaching company, sent in connection with each shipment,

informed it that the goods were sent, and were to be finished on account of the plaintiff, but that Casey was to give the instructions as to the finishing and pay the bills for finishing, and requested information as to the shipment of any of the goods by Casey.

A letter sent by the plaintiff in connection with the first shipment informed the bleaching company that Casey was to give all instructions regarding them and the goods to be thereafter sent until further orders from it. In the month of June, Casey, in violation of the contract, removed from the bleachery more than twenty-five hundred pieces without making the required payment. The plaintiff at once upon being informed of it by the bleaching company, requested Casey to return the goods so taken, and he complied, so far as he could, with the request. The court has not found, and it cannot be inferred from the finding, that the plaintiff has waived any of his rights under the contract. The authority which it is found that Casey, by the permission of the plaintiff, exercised over the goods, was only such as was given to him by the contract. The charging of the goods in the plaintiff's books as if sold on the day they were sent to the bleachery, and sending an invoice to Casey as of goods sold, is probably accounted for by the fact that, upon the performance by Casey of his contract, the sale was to date from the time of the delivery of the goods at the bleachery, in respect to the credit to be given; but however this may be, these facts are not of controlling significance.

There is error, and a new trial is granted.

In this opinion the other judges concurred.