**Michael SALTZMAN, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security Administration, Defendant.**

**No. CV 00–0246–DDP (RC).**

United States District Court, C.D. California.

Dec. 14, 2000.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

PREGERSON, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Complaint and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, and has made a *de novo* determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) plaintiff's motion for summary judgment is granted and defendant's motion for summary judgment is denied; and (3) the Commissioner's decision to terminate plaintiff's disability benefits as of January 1, 1997, is reversed, and Judgment shall be entered in favor of plaintiff.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on the parties.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Dean D. Pregerson, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

## BACKGROUND

### I

Plaintiff Michael Saltzman filed a complaint on January 10, 2000, seeking review of the Commissioner's decision terminating his disability benefits based on his alleged substance abuse. The plaintiff filed a motion for summary judgment on May 30, 2000, and the defendant filed a cross-motion for summary judgment motion on August 23, 2000. The plaintiff filed a reply on September 21, 2000.

### II

On March 26, 1993, the plaintiff applied for disability benefits under Title II of the Social Security Act, 42 U.S.C. § 423, claiming an inability to work since December 15, 1991, due to schizophrenia. Certified Administrative Record ("A.R.") 48–51. The plaintiff was found disabled and granted disability benefits. A.R. 16.

Effective January 1, 1997, the Commissioner terminated plaintiff's disability benefits, finding the benefits were based, in whole or in part, on plaintiff's substance abuse. A.R. 11. On July 16, 1996, plaintiff filed a request for reconsideration, A.R. 59–60, which was denied on September 19, 1996. A.R. 57–58. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Charles Hall ("ALJ") on May 6, 1998. A.R. 23, 132. On July 18, 1998, the ALJ issued a decision finding the plaintiff is no longer disabled. A.R. 8–20. The plaintiff sought review by the Appeals Council; however, review was denied on December 14, 1999. A.R. 3–5.

### III

The plaintiff was born on May 22, 1966; he is currently 34 years old. A.R. 26, 48. The plaintiff has a tenth-grade education and prior work experience as a furniture loader, tow truck driver, and fast food worker. A.R. 27–29, 55.

The ALJ found the plaintiff does not have a severe impairment, as of January 1, 1997. A.R. 16–17. The plaintiff, however, contends the ALJ's determination is not supported by substantial evidence because the ALJ erroneously failed to consider the report of an examining physician, which establishes that plaintiff's impairment is severe and meets and/or equals a Listing.

## IV

The plaintiff has the following pertinent medical history: The plaintiff was confined in Metropolitan State Hospital ("MSH") in March 1993. A.R. 110.[1] While at MSH, the plaintiff was diagnosed with a schizoaffective disorder and polysubstance abuse, his Global Assessment of Functioning ("GAF") was found to be 60,[2] and various medications were prescribed. A.R. 103–04, 109, 112. Upon his discharge from MSH, plaintiff was found to have impaired memory, suffer from auditory hallucinations,[3] and have paranoid delusions. A.R. 109–13.

On July 7, 1993, the plaintiff was again admitted to MSH, this time under Cal. Welfare and Institutions Code ("W. & I.Code") § 5150, as a danger to himself.[4] A.R. 95–96, 99–101. He was evaluated by A. Hussain, M.D., who diagnosed him with bipolar disorder (depressed), polysubstance dependence, and antisocial personality disorder. A.R. 100. Dr. Hussain found plaintiff's GAF to be 40,[5] and that his highest GAF during the past year was 45.[6] *Id.* Dr. Hussain also found that plaintiff has a "significant degree of slowness to his thought processes" and has trouble registering and responding to information.

A.R. 100–01. The plaintiff was discharged from MSH on July 29, 1993. A.R. 93–96.

In 1995, plaintiff was incarcerated at Folsom State Prison, where he was diagnosed with undifferentiated schizophrenia and heroin dependence. A.R. 120. Following placement in administrative segregation on June 21, 1995, plaintiff was evaluated by Jerre L. Lender, Ph.D., a licensed psychologist. A.R. 119. Dr. Lender diagnosed plaintiff as having adjustment disorder with mixed anxiety and depressed mood, intermittent explosive disorder, opiate and hallucinogen abuse (in institutional remission), malingering (for placement), and anti-social personality disorder with histrionic features. *Id.*

On August 27, 1996, plaintiff was examined by Susan Wallace, M.D., a psychiatrist, who diagnosed plaintiff as having polysubstance abuse **in full remission.** A.R. 127–31. Dr. Wallace observed that the plaintiff was "disheveled, unkempt, and filthy." A.R. 127, 129.

The plaintiff was admitted to Gateways Hospital on December 26, 1997, and released on or about January 8, 1998. A.R. 137. At Gateways, plaintiff was diagnosed with schizoaffective disorder, with the possibility of paranoid schizophrenia. A.R. 137–38. He was treated with Elavil,[7] Ris-

1. The medical records do not show when plaintiff was admitted to MSH and how long he was hospitalized; however, he was discharged from MSH on March 4, 1993. A.R. 110.

2. A GAF of 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders,* 32 (4th ed.1994).

3. The plaintiff reports first experiencing auditory hallucinations when he was five years old. A.R. 110.

4. The plaintiff has a history of suicide attempts. A.R. 97, 99.

5. A GAF of 40 indicates "[s]ome impairment in reality testing or communication (e.g.,

speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders,* 32 (4th ed.1994).

6. A GAF of 45 means that the plaintiff exhibits "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." *Id.*

7. "Elavil is prescribed for the relief of symptoms of mental depression." *The PDR Family Guide to Prescription Drugs,* 204 (5th ed.1997).

perdal,[8] and Serzone.[9] *Id.*

Almost six months later, on June 23, 1998, the plaintiff was examined by William Goldsmith, M.D., a psychiatrist, who diagnosed plaintiff with paranoid schizophrenia, polydrug abuse (heroin, cocaine, LSD, marijuana), and anti-social traits. A.R. 145–48. Dr. Goldsmith noted that plaintiff was "poorly groomed with stained clothing[, but] ... was not disheveled and had good hygiene." A.R. 145. After giving plaintiff a mental status examination, Dr. Goldsmith described plaintiff as "a restless man who related in a cooperative but non-spontaneous manner[,]" his mood and affect were anxious, he appeared to be of below average intelligence, he appeared occasionally distracted and preoccupied, and "[h]e had chronically impaired judgement [sic] in respect to drinking." A.R. 147. Dr. Goldsmith completed a mental status examination of plaintiff and concluded that:

> [The plaintiff shows] evidence of moderately severe disturbance in functioning by psychosis and complicated by polydrug abuse and anti-social characteristics.... [His] ability to relate and interact is impaired.... He has a slightly impaired ability to concentrate. He can understand and carry out one and two step instructions without repetitions.... At this time, [plaintiff] is not able to function in a workplace environment requiring peer and public contact. He has an impaired ability to tolerate criticism. Persistence and pace is slowed.... He has an impaired ability to get to work promptly and regularly because of his psychosis, poor work history and poor history of functioning with antisocial behavior and drug abuse.... [However,] he is able to follow simple safety rules.

A.R. 147–48.

■ The plaintiff testified at the administrative hearing that he was taking Artane,[10] Haldol,[11] Mellaril,[12] Risperdal and Serzone, which had been prescribed to him by Dr. Ciasca.[13] A.R. 135. He also testified that he has been drug free since at least January 1997, and had attended a drug treatment program between December 1997 and March 1998. A.R. 35–37.

## DISCUSSION

### V

■ Pursuant to 42 U.S.C. § 405(g), the Court has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.1999); *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir.1998). "Sub-

---

8. "Risperdal[, also called Risperidone,] is prescribed to treat severe mental illnesses such as schizophrenia." *Id.*

9. "Serzone is prescribed for the treatment of depression severe enough to interfere with daily functioning." *Id.*

10. "Artane is used, in conjunction with other drugs, for the relief of certain symptoms of Parkinson's disease, a brain disorder that causes muscle tremor, stiffness and weakness. It is also used to control certain side effects induced by antipsychotic drugs such as Thorazine and Haldol." *The PDR Family Guide to Prescription Drugs* at 41.

11. "Haldol is used to reduce the symptoms of mental disorders such as schizophrenia." *Id.* at 258.

12. "Mellaril is used to reduce the symptoms of psychotic disorders such as schizophrenia, and to treat depression and anxiety in adults." *Id.* at 344.

13. The administrative record contains no reports from this physician. *See* A.R. 135. Although "the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered," *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir.1996), and this is "especially important" when the claimant has a mental impairment, *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir.1991), the ALJ made no attempt to ascertain who Dr. Ciasca is or to obtain plaintiff's medical evidence from this physician.

stantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morgan v. Commissioner of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir.1999); *Meanel*, 172 F.3d at 1113.

■ "Once a claimant has been found to be disabled, ... a presumption of continuing disability arises in [his] favor[, and the Commissioner] bears the burden of producing evidence sufficient to rebut this presumption of continuing disability." *Bellamy v. Secretary of Health & Human Serv.*, 755 F.2d 1380, 1381 (9th Cir.1985); *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir.1983); *Iida v. Heckler*, 705 F.2d 363, 365 (9th Cir.1983). "This evidence must be reviewed under the 'substantial evidence' standard." *Murray*, 722 F.2d at 500.

On March 29, 1996, the Social Security Act ("Act") was amended to "preclude[ ] the award of benefits to certain claimants whose disability is based, in whole or in part, on alcoholism and drug addiction or either of them." Pub.L. No. 104–121, 110 Stat. 847, 852 (1996).[14] The Act now provides:

[a]n individual shall not be considered disabled ... if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled. 42 U.S.C. § 423(d)(2)(C).

■ "The 'key factor ... in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability' is whether an individual would still be found disabled if [he] stopped using alcohol or drugs." *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998); *see also* 20 C.F.R. § 404.1535(b)(1)(same). "In making this determination, [the Commissioner] will evaluate which of [the claimant's] current physical and mental limitations ... would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. § 404.1535(b)(2).

■ Here, the ALJ did not explicitly consider whether plaintiff's drug abuse is a "contributing factor" to his mental condition. Rather, the ALJ applied the wrong legal standard and evaluated plaintiff's case as if it were a new claim for disability benefits. Erroneously applying the five-step sequential evaluation process for determining eligibility for disability benefits,[15] the ALJ purportedly found, at Step

**14.** Since plaintiff initially was found to be disabled by the Commissioner before March 29, 1996, the drug/alcohol preclusion did not immediately apply to him; however, the amendment applied to plaintiff as of January 1, 1997. Pub.L. No. 104–121, 110 Stat. at 853.

**15.** Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed by the ALJ in a disability case. 20 C.F.R. § 404.1520. In the **First Step,** the ALJ must determine whether the claimant is currently engaged in substantial gainful activity; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.1520(b). If the claimant is not currently engaged in substantial gainful activity, in the **Second Step,** the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities; if not, a finding of non-

disability is made and the claim is denied. 20 C.F.R. § 404.1520(c). If the claimant has a severe impairment, in the **Third Step,** the ALJ must compare the impairment to those impairments in the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1; if the impairment meets or equals an impairment in the Listing, disability is conclusively presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). When the claimant's impairment does not meet or equal an impairment in the Listing, in the **Fourth Step,** the ALJ must determine whether the claimant has sufficient "residual functional capacity" despite the impairment or various limitations to perform his past work; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.1520(e). When the claimant shows an inability to perform past relevant work, a *prima facie* case of disability is established and, in **Step Five,** "the burden shifts to the Commissioner to show that the claimant can perform some

Two, that plaintiff's mental impairment is not severe, holding "[t]here is no evidence that [plaintiff] would be disabled if he were to stop abusing drugs, or that he is prevented from working when he does abuse drugs." A.R. 15.

The Commissioner's determination that the plaintiff is not disabled, as of January 1, 1997, is supported by **absolutely no evidence.** Dr. Goldsmith was the only physician to evaluate plaintiff during the relevant time period, and Dr. Goldsmith did not address whether plaintiff would be disabled but for his history of drug abuse; thus, there is no evidence in the record to rebut the presumption of plaintiff's continuing disability and absolutely no evidence to support the Commissioner's termination of plaintiff's benefits.

Moreover, as set forth in Part IV, Dr. Goldsmith is the only physician to have assessed the effect of plaintiff's mental impairment on his ability to work after January 1, 1997, when he examined plaintiff on June 23, 1998. At that time, Dr. Goldsmith diagnosed plaintiff as having paranoid schizophrenia, and found plaintiff cannot function in a work setting. Nevertheless, the ALJ determined that plaintiff's mental impairment is not severe, failing to discuss Dr. Goldsmith's findings and opinions. Under the Act, "the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." *Regennitter v. Commissioner of the Soc. Sec. Admin.,* 166 F.3d 1294, 1298–99 (9th Cir.1999); *Lester v. Chater,* 81 F.3d 821, 830–31 (9th Cir.1995); *Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir. 1995). As such, it was legal error for the ALJ to implicitly reject Dr. Goldsmith's medical opinions without discussing them. *Smolen,* 80 F.3d at 1286.

Since "[b]enefits wrongfully terminated should be reinstated without further

other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual func-

agency proceedings[,]" *Iida,* 705 F.2d at 365, the Commissioner should be ordered to reinstate plaintiff's disability benefits as of January 1, 1997.

## RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) granting plaintiff's motion for summary judgment and denying defendant's motion for summary judgment; and (3) reversing the Commissioner's decision to terminate plaintiff's disability benefits as of January 1, 1997, and entering Judgment in favor of plaintiff.

October 6, 2000.

tional capacity, age, education, and work experience." 20 C.F.R. § 404.1520(f).