**Keith A. HOFFMAN, aka Keith A. Hoffmann, Plaintiff,**

**v.**

**William A. HALTER, Acting Commissioner of Social Security Administration,[1] Defendant.**

**No. CV 00–5946–RC.**

United States District Court, C.D. California.

March 23, 2001.

---

**1.** Pursuant to Fed.R.Civ.P. 25(d)(1), William A. Halter, Acting Commissioner of the Social Security Administration, is substituted for Kenneth S. Apfel as the defendant.

Lawrence D. Rohlfing, Santa Fe Springs, CA, for Plaintiff.

Sara R. Robinson, Asst. U.S. Atty., Los Angeles, CA, for Defendant.

## MEMORANDUM DECISION AND ORDER

CHAPMAN, United States Magistrate Judge.

Plaintiff Keith A. Hoffman, aka Keith A. Hoffmann, filed a complaint on June 7, 2000, seeking review of the Commissioner's decision denying his application for disability benefits. The plaintiff filed a motion for summary judgment on November 29, 2000, and the defendant filed a cross-motion for summary judgment motion on January 29, 2001. The plaintiff filed a reply on February 28, 2001. The parties have consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c).

**BACKGROUND**

**I**

Sometime prior to March 29, 1996, plaintiff applied for disability benefits under Title II of the Social Security Act, 42 U.S.C. § 423, and was found disabled due to alcoholism and granted disability benefits.[2] Certified Administrative Record ("A.R.") 23. In June 1996, the Commissioner notified plaintiff that he was terminating plaintiff's disability benefits effective January 1, 1997, because the benefits were based, in whole or in part, on plaintiff's alcoholism. A.R. 22. On July 1, 1996, plaintiff filed a request for reconsideration, A.R. 75–76, which was denied on September 16, 1996. A.R. 102–04. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Lana H. Parke ("ALJ") on May 21, 1998. A.R. 50, 105–06. On July 31, 1998, the ALJ issued a decision finding the plaintiff is no longer disabled. A.R. 19–32. The plaintiff sought review by the Appeals Council; however, review was denied on April 21, 2000. A.R. 5–6, 9–10, 13–14.

**II**

The plaintiff was born on January 18, 1945; he is currently 56 years old. A.R. 189. The plaintiff has a junior college education and prior work experience as a payroll administrator, staff administrator, and administrative assistant. A.R. 121.

The plaintiff has the following pertinent medical history:[3] Since July 21, 1985,

2. The administrative record does not contain plaintiff's application for disability benefits or the notice awarding such benefits. However, both parties agree that plaintiff was awarded Title II disability benefits based upon his alcoholism. Plaintiff's Motion for Summary Judgment at 3:4–9; Defendant's Cross–Motion for Summary Judgment at 1:25–2:3.

3. The plaintiff has an extensive medical history. However, only plaintiff's medical history pertaining to his mental status is discussed in detail. Nevertheless, a thorough review of the medical record shows that plaintiff suffers from numerous physical maladies, including a history of two myocardial infarctions, coronary artery disease, chronic obstructive pulmonary disease, bladder can-

plaintiff has been hospitalized at the Long Beach Veterans' Administration Medical Center ("LBVAMC") on at least nine occasions for alcohol-related problems. A.R. 140–87, 362–81, 400–01. He also has been treated at Harbor–UCLA Medical Center,[4] the Brotman Medical Center, Lakewood Regional Medical Center, St. Mary's Medical Center, and Charter Hospital of Los Altos. A.R. 188, 200–14, 299–300, 248–49, 259–265, 299–300, 506–16. During these hospitalizations, plaintiff was diagnosed with numerous mental impairments, including post-traumatic stress disorder, personality disorder, organic mood disorder, adjustment disorder, and major depression. A.R. 156–75, 178–79, 238–49, 400–01, 515. On several occasions, his hospitalizations resulted from suicidal gestures, and on other occasions plaintiff has voiced suicidal ideations and experienced hallucinations. A.R. 170–73, 178–79, 248–49, 514. During several of his hospitalizations, the plaintiff was treated with individual therapy, group therapy, and occupa-

tional and recreational therapy, and he has been prescribed Librium,[5] Paxil,[6] Prozac,[7] and Trazodone.[8] A.R. 160, 162, 167, 248, 299–300, 362, 364. On October 6, 1998, when he was last discharged from LBVAMC, he was, *inter alia,* diagnosed with post-traumatic stress disorder, alcohol-induced mood disorder and depression (resolving), and his Global Assessment of Functioning ("GAF") was 40.[9] A.R. 362–66. Additionally, Carlota Carvajal, M.D., who treated plaintiff during his last stay at LBVAMC, found that plaintiff's most recent hospitalization "was triggered by" depression, post-traumatic stress disorder and frustration at not being able to work on a 12–step program. A.R. 362.

On January 29, 1996, the plaintiff was admitted to the Charter Hospital of Los Altos by Maurice W. Black, M.D., who diagnosed plaintiff with, *inter alia,* depressive disorder (not otherwise specified) and passive-aggressive personality disorder. A.R. 259–65. Dr. Black found that plain-

---

cer, hypertension, hypercholester-olemia, and plantar pressure keratoses. A.R. 137, 152–54, 167, 188–89, 205, 211, 220–24, 228–30, 240–43, 249, 254–65, 294–98, 302, 362–81.

4. Following the ALJ's decision, the plaintiff submitted over 200 pages of additional medical evidence to the Appeals Council, including the Harbor–UCLA Medical Center's records. A.R. 313–516. Since "the Appeals Council affirmed the decision of the ALJ [terminating plaintiff's] benefits..., [the additional] evidence is part of the record on review to this court." *Gomez v. Chater,* 74 F.3d 967, 971 (9th Cir.), *cert. denied,* 519 U.S. 881, 117 S.Ct. 209, 136 L.Ed.2d 144 (1996); *Harman v. Apfel,* 211 F.3d 1172, 1180 (9th Cir.2000).

5. "Librium is used in the treatment of anxiety disorders." *The PDR Family Guide to Prescription Drugs,* 310 (5th ed.1997).

6. "Paxil is prescribed for serious, continuing depression that interferes with [the] ability to function. Symptoms of this type of depression often include changes in appetite and sleep patterns, a persistent low mood, loss of

interest in people and activities, decreased sex drive, feelings of guilt or worthlessness, suicidal thoughts, difficulty concentrating, and slowed thinking." *Id.* at 427–28.

7. "Prozac is prescribed for the treatment of depression—that is, a continuing depression that interferes with daily functioning." *Id.* at 482.

8. Trazodone, also called Desyrel, "is prescribed for the treatment of depression." *Id.* at 164, 596.

9. A GAF of 40 indicates [s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders,* 32 (4th ed.1994).

tiff's GAF was 58,[10] and his highest GAF within the past year was 66.[11] A.R. 259. The plaintiff was started on a treatment plan that included group and individual therapy, and he was prescribed Desyrel. A.R. 188, 261.

On July 21, 1996, the plaintiff was admitted to Lakewood Regional Medical Center, where he was again treated by Dr. Black, until he was released on July 31, 1996. A.R. 193–97, 200–14. Dr. Black diagnosed plaintiff with, *inter alia,* depressive disorder (not otherwise specified), history of major depression, and passive-aggressive personality disorder. A.R. 205, 211. Dr. Black found that plaintiff's initial GAF was 28,[12] and his GAF at discharge was 59. A.R. 195, 205, 211. When discharged, plaintiff was prescribed Paxil, among other medications. A.R. 197.

Between August 1996 and April 1999, plaintiff was examined by several consulting psychiatrists: On August 23, 1996, the plaintiff was examined by Khang Nguyen, M.D., who diagnosed plaintiff with a history of alcohol abuse and depression, A.R.

244–47; on June 19, 1998, the plaintiff was evaluated by Mounir Soliman, M.D., who diagnosed the plaintiff with mild-to-moderate major depression, among other things, and found plaintiff's current GAF to be 65, A.R. 303–07;[13] on June 29, 1998, the plaintiff was evaluated by David Bedrin, M.D., who administered psychiatric testing and diagnosed plaintiff with panic disorder with agoraphobia, depressive disorder not otherwise specified, and personality disorder not otherwise specified, and found plaintiff's current GAF to be 65, A.R. 392–98, and Dr. Bedrin also found that plaintiff "did have impaired immediate recall which shows that [his] comprehension is hindered," A.R. 398; and on April 27, 1999, D. Heninger, M.D., at the Los Angeles County Department of Mental Health, diagnosed plaintiff as having major depression, and prescribed Desyrel and Zoloft[14] for him, A.R. 493–504, and Dr. Heninger found that plaintiff has signs and symptoms of chronic delayed post-traumatic stress disorder and major depression and obsessive-compulsive disorder. A.R. 502.

**10.** A GAF of 51–60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders,* 32 (4th ed.1994).

**11.** A GAF of 61–70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.*

**12.** A GAF of 28 means that the plaintiff's "[b]ehavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)."

American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed.1994).

**13.** Dr. Soliman opined that plaintiff is able to understand, remember and carry out simple and complex instructions, relate and interact with co-workers, supervisors and the general public, and withstand the stress and pressures associated with an 8–hour workday and day-to-day activities, A.R. 306, and concluded that plaintiff's symptoms are treatable and manageable as an outpatient. A.R. 307. Dr. Soliman also opined that plaintiff's ability to make occupational and social adjustments is good. A.R. 309–11.

**14.** "Zoloft is prescribed for major depression—a persistently low mood that interferes with everyday living." *The PDR Family Guide to Prescription Drugs,* 651 (5th ed.1997).

## DISCUSSION

### III

On March 29, 1996, the Social Security Act ("Act") was amended to "preclude[ ] the award of benefits to certain claimants whose disability is based, in whole or in part, on alcoholism and drug addiction or either of them." Pub.L. No. 104–121, 110 Stat. 847, 852 (1996).[15] The Act now provides that:

> [a]n individual shall not be considered disabled ... if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled.

42 U.S.C. § 423(d)(2)(C).

"The 'key factor ... in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability' is whether an individual would still be found disabled if [he] stopped using alcohol or drugs." *Sousa v. Callahan,* 143 F.3d 1240, 1245 (9th Cir. 1998) (citation omitted); *see also* 20 C.F.R. § 404.1535(b)(1) (same). "In making this determination, [the Commissioner] will evaluate which of [the claimant's] current physical and mental limitations ... would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. § 404.1535(b)(2).

The Court has the authority, under 42 U.S.C. § 405(g), to review the Commissioner's decision terminating disability benefits to plaintiff to determine whether his findings are supported by substantial evidence and the Commissioner used the proper legal standards in reaching his decision. *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir.1999); *Reddick v. Chater,* 157 F.3d 715, 720 (9th Cir.1998). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morgan v. Commissioner of the Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir.1999); *Meanel,* 172 F.3d at 1113.

"Once a claimant has been found to be disabled, ... a presumption of continuing disability arises in [his] favor[, and the Commissioner] bears the burden of producing evidence sufficient to rebut this presumption of continuing disability." *Bellamy v. Secretary of Health & Human Serv.,* 755 F.2d 1380, 1381 (9th Cir.1985); *Murray v. Heckler,* 722 F.2d 499, 500 (9th Cir.1983); *Iida v. Heckler,* 705 F.2d 363, 365 (9th Cir.1983). "This evidence must be reviewed under the 'substantial evidence' standard." *Murray,* 722 F.2d at 500.

### IV

The ALJ found plaintiff suffers from alcoholism, and that it is a "contributing factor material to the disability determination." A.R. 26, 28. Although the ALJ's finding that plaintiff suffers from alcoholism is supported by the record, i.e., plaintiff's numerous hospitalizations for alcohol-related problems, A.R. 140–88, 200–14, 299–300, 238–49, 259–265, 299–300, 362–81, 400–01, 506–16, her determination that plaintiff would not be disabled if he stopped using alcohol is not supported by substantial evidence. Further, in making this determination, the ALJ failed to apply the proper legal standard, 20 C.F.R. § 404.1535(b), and specifically failed to address plaintiff's mental or psychiatric limitations.

15. Since plaintiff initially was found to be disabled by the Commissioner before March 29, 1996, the drug/alcohol preclusion did not immediately apply to him; however, the amendment applied to plaintiff as of January 1, 1997. Pub.L. No. 104–121, 110 Stat. at 853.

The ALJ, in applying the wrong legal standard, evaluated plaintiff's case as if it were a new claim for disability benefits. *Saltzman v. Apfel*, 125 F.Supp.2d 1014, 1019–20 (C.D.Cal.2000). Erroneously applying the five-step sequential evaluation process for determining eligibility for disability benefits,[16] the ALJ found, at Step Two, that plaintiff has "non-severe depressive and anxiety disorders" that, "independent of alcohol abuse, do not significantly compromise his ability to perform complex and simple tasks." A.R. 26–28.

In making this finding, the ALJ relied solely on Dr. Soliman's evaluation of plaintiff, while erroneously failing to consider the plaintiff's mental condition or mental limitations, as set forth in the voluminous medical records documenting plaintiff's numerous psychiatric diagnoses, hospitalizations and related treatment.[17] *Saltzman*, 125 F.Supp.2d at 1020. Instead, the ALJ cavalierly dismissed those records, noting only that "the treating records up through 1996 were significant for continuing alcohol abuse." A.R. 26. This is true, but insufficient. These records clearly show that, as discussed in Part II above, plaintiff has been diagnosed with several mental conditions, including post-traumatic stress disorder, personality disorder, and organic mood disorder, A.R. 156–75, 178–79, 238–49, 400–01, 515, and these conditions are not necessarily the result of plaintiff's alcohol dependency. *See Sousa*, 143 F.3d at 1245 ("In arriving at this [nondisability] conclusion, the court failed to distinguish between substance abuse contributing to the disability and the disability remaining after the claimant stopped using drugs or alcohol. The two are not mutually exclusive. Just because substance abuse contributes to a disability does not mean that when the substance abuse ends, the disability will too."); *cf.* Charles T. Hall, *Social Security Disability Practice*, § 5:20 (2000) ("Alcoholics and drug addicts may become depressed about the effects that alcohol and drugs have on their lives and this depression could not be considered, but as a medical matter, it is well settled that alcoholism and drug addiction do not themselves cause [psychological conditions such as] bipolar disorder or schizophrenia."). To ignore and, in essence, implicit-

**16.** Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed by the ALJ in a disability case. 20 C.F.R. § 404.1520. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.1520(b). If the claimant is not currently engaged in substantial gainful activity, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities; if not, a finding of non-disability is made and the claim is denied. 20 C.F.R. § 404.1520(c). If the claimant has a severe impairment, in the Third Step, the ALJ must compare the impairment to those impairments in the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1; if the impairment meets or equals an impairment in the Listing, disability is conclu-

sively presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). When the claimant's impairment does not meet or equal an impairment in the Listing, in the Fourth Step, the ALJ must determine whether the claimant has sufficient "residual functional capacity" despite the impairment or various limitations to perform his past work; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.1520(e). When the claimant shows an inability to perform past relevant work, a prima facie case of disability is established and, in Step Five, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(f).

**17.** Nor did the Appeals Council discuss the new records plaintiff presented to it; rather it merely concluded "that this evidence does not provide a basis for changing the Administrative Law Judge's decision." A.R. 5.

ly reject evidence of plaintiff's mental limitations is legal error, *Smolen v. Chater,* 80 F.3d 1273, 1286 (9th Cir.1996), and, further, renders the Commissioner's decision to terminate plaintiff's disability benefits unsupported by substantial evidence. *Saltzman,* 125 F.Supp.2d at 1020.

## V

Since "[b]enefits wrongfully terminated should be reinstated without further agency proceedings[,]" *Iida,* 705 F.2d at 365, the Commissioner should be ordered to reinstate plaintiff's disability benefits as of January 1, 1997.

## ORDER

IT IS ORDERED that: (1) plaintiff's motion for summary judgment is granted and defendant's cross-motion for summary judgment is denied; and (2) the Commissioner's decision to terminate plaintiff's disability benefits as of January 1, 1997, is reversed, and Judgment is entered in favor of plaintiff.