Sandra **BELLAMY**, Plaintiff/Appellant,

v.

**SECRETARY OF HEALTH & HUMAN SERVICES**, Defendant/Appellee.

No. 84–5544.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 5, 1984.

Decided March 18, 1985.

William A. Snyder, Snyder & Rios, Newport Beach, Cal., for plaintiff/appellant.

Dennis J. Mulshine, Asst. Regional Atty., San Francisco, Cal., for defendant/appellee.

Before FERGUSON and NELSON, Circuit Judges, and JAMESON,* District Judge.

NELSON, Circuit Judge:

Sandra Bellamy appeals from the district court's summary judgment upholding the termination of her social security benefits by the Secretary of Health and Human Services ("Secretary"). We reverse and remand to the district court.

Appellant Sandra Bellamy was hit by a car in August 1979. She sustained a fractured leg and a head injury which required 62 stitches. During her hospitalization she was diagnosed by a neurologist, Dr. Orfuss, as suffering from "post-traumatic vestibolopathy", inner-ear damage. Bellamy applied for disability benefits, which were granted dating from August, 1979. In September, 1980 she was informed that her benefits were terminated. She appealed the cessation and received an administrative hearing in June, 1981. In August, 1981 the Administrative Law Judge ("ALJ") found that her disability had ended in September, 1980, since she was then capable of returning to sedentary work. Bellamy appealed this decision.

The district court granted summary judgment for the Secretary, adopting the recommendation of a United States Magistrate. The Magistrate agreed with the ALJ that Bellamy was not disabled and was capable of sedentary work. He found, however, that the ALJ had failed to follow the sequential evaluation of disability claims procedure mandated by 20 C.F.R. §§ 404.1520 and 416.920 (1981). With the agreement of counsel for both parties, the Magistrate reexamined the file and himself performed the sequential evaluation, reaching the same conclusion as that of the ALJ.

* Hon. William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

### A. Is the Termination of Benefits Supported by Substantial Evidence?

Social Security disability benefits claimants have the burden of proving disability. *Iida v. Heckler*, 705 F.2d 363 (9th Cir.1983). Once a claimant has been found to be disabled, however, a presumption of continuing disability arises in her favor. *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir.1983). The Secretary then bears the burden of producing evidence sufficient to rebut this presumption of continuing disability. *Id.* This evidence must be produced before the Secretary can even consider the medical-vocational guidelines, *Perry v. Heckler*, 722 F.2d 461 (9th Cir.1983), and is reviewed under the "substantial evidence" standard. *Murray*, 722 F.2d at 500 (9th Cir.1983).

The Secretary failed to offer evidence sufficient to overcome the presumption of Bellamy's continuing disability. While the Secretary produced some evidence that Bellamy's leg fracture had healed, there has been no clear showing of improvement in her symptoms of dizziness, pain and fainting.

Bellamy's treating orthopedist and the Secretary's consulting orthopedist, Dr. Chung, agreed that Bellamy's injured leg had healed but would never regain its full strength. They both found that she could stand for no more than two hours, had extremely limited weight-bearing capacity, and dragged the injured leg when she walked. The injured leg is now one inch shorter than the other leg. Dr. Chung opined that Bellamy's complaints of back pain would be alleviated by a lift to the shorter leg. On this issue, the ALJ's finding that Bellamy's leg had healed as far as possible is supported by the opinions of both the treating physician and the consulting physician. *Cf. Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983); *Allen v. Heckler*, 749 F.2d 577 (9th Cir.1984).

On the issue of Bellamy's non-exertional impairments, however, the record contains the uncontroverted testimony of a neurologist, Dr. Orfuss, that in February 1981 Bellamy continued to experience dizziness, fainting, and continuing leg pain. She was also treated in May, 1981 for dizziness. The ALJ cannot disregard this uncontroverted medical opinion, which is supported by Bellamy's testimony, without clear and convincing reasons. *See e.g., Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir.1975). Bellamy testified that she falls down from dizziness two or three times per week.

The ALJ gave several reasons why he attached "little significance" to Bellamy's complaints of dizziness and fainting, but these do not meet the "clear and convincing" standard. First, he stressed that he did not credit these ailments because Bellamy did not see Dr. Orfuss between late August, 1979 and early February, 1981 and between late February, 1981 and July, 1981. Even if gaps between doctor visits could be considered probative evidence, we note that the 1979–1981 period is explained by Bellamy's statements that: 1) Dr. Orfuss told her that the symptoms would take a long time to cure; 2) Dr. Orfuss had given her medication for these symptoms; and 3) the symptoms had worsened in late 1980 and 1981. The gap between February and July, 1981 is filled by the evidence in the record that Bellamy sought treatment in May, 1981 from Friendly Hills Medical Group for these symptoms. Moreover, it is possible that Bellamy was treated before 1981 by Friendly Hills; the ALJ asked only for their 1981 records on her visits.

The ALJ's second reason was his conclusion, based solely upon the "Past Medical History" report of the consulting orthopedist, that Bellamy had suffered fainting and nausea since her skull was fractured at

age nine and that these symptoms had not previously hindered her work as a waitress.[1] The record does not support the conclusion that Bellamy had always suffered from fainting. Moreover, this reason contradicts the ALJ's third stated reason; he perceived a lack of clinical support for Bellamy's non-exertional symptoms.

██ An ALJ's observations are insufficient grounds to reject uncontroverted medical opinion, though a claimant's self-serving statements may be disregarded if unsupported by objective evidence. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir.1984). Dr. Orfuss substantiated Bellamy's testimony concerning her non-exertional ailments with a clinical judgment that, in February 1981, Bellamy still suffered from post-traumatic vestibulopathy. The ALJ relied on Dr. Orfuss's statement that patients with less severe trauma than Bellamy's had recovered more quickly, but did not justify a rejection of Dr. Orfuss's statement that such a recovery "was not the case" with Bellamy.

The ALJ failed to make any findings concerning Bellamy's testimony of "terrific pain" in her leg, which was substantiated by the reports of two doctors. She testified that the leg pain often prevented her from sleeping. While the ALJ noted Dr. Chung's statement that a leg lift would alleviate Bellamy's *back* pain, his failure to make findings on her leg pain was error. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983). The ALJ did not convincingly justify his rejection of uncontroverted testimony and significant probative evidence concerning Bellamy's non-exertional impairments. *Vincent v. Heckler*, 739 F.2d 1393 (9th Cir.1984).

Substantial evidence does not support the Secretary's determination that Bellamy could perform sedentary work, particularly since the ALJ himself stated that substanti-

---

1. The June, 1981 report of Dr. Chung, the consulting orthopedist, under the heading "Past Medical History," contained the following language:

"... The patient otherwise *has been quite healthy.* She had a cyst removed from the forehead at the age of five.... The patient had skull fracture at the age of nine when she

was hit by a diesel truck. She was in the hospital on and off for about one year. During that time, she had fractured skull. Subsequent to that, the patient had fainting and nausea. She is currently taking Antivert..." (emphasis added).

The record shows that Bellamy was prescribed Antivert in February, 1981 by Dr. Orfuss.

ation of Bellamy's non-exertional ailments could "change the overall picture." On remand, the ALJ must consider these symptoms, together with Bellamy's leg impairments, to determine whether her benefits were correctly terminated.

### B. *Application of the Grids*

■ Even if Bellamy were capable of sedentary work, the Secretary improperly relied solely upon the medical-vocational guidelines in 20 C.F.R. § 404, Appendix 2 to Subpart P ("the grids") in determining that she was not disabled. This Circuit has held that if the grids fail to describe accurately a claimant's particular limitations, the Secretary may not rely upon the grids alone to show the availability of jobs for that claimant. *See Allen v. Secretary of Health & Human Services,* 726 F.2d 1470, 1472 (9th Cir.1984); *Kail v. Heckler,* 722 F.2d 1496, 1498 (9th Cir.1983). The record here reveals several significant non-exertional impairments (pain, nausea, dizziness, and fainting) that precluded sole reliance on the grids.

*Odle v. Heckler,* 707 F.2d 439 (9th Cir. 1983), in which we determined that a claimant's non-exertional impairments of deafness, dizziness, and drug dependence did not preclude application of the grids, is not to the contrary. In *Odle,* which concerned a denial of disability benefits rather than a termination of benefits, we determined that substantial evidence supported the conclusion that the impairments did not significantly limit Mr. Odle's exertional capabilities. *Id.* at 440. Such is not the case here.

The ALJ's reliance on the grids was error and the Secretary must consider evidence, beyond the grids, of whether Bellamy's impairments significantly restricted the range of sedentary jobs available to her.

### C. *Magistrate's Correction of ALJ's Error*

Bellamy now contends that the Magistrate's action in performing the sequential evaluation procedure, which the ALJ failed to follow, was improper. Our disposition does not require us to reach this claim, though we note that the claim appears to be waived by Bellamy's agreement below to this method of correcting the ALJ's error.

### CONCLUSION

We reverse and remand to the district court for further proceedings consistent with this decision.

REVERSED and REMANDED.