Martha **STEWART**, Plaintiff–Appellant,

v.

Louis W. **SULLIVAN**, Secretary of Health and Human Services *, Defendant–Appellee.

No. 88–6420.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 5, 1989.

Decided Aug. 3, 1989.

---

* Louis W. Sullivan is substituted for his predecessor Otis R. Bowen, Secretary of Health and Human Services, pursuant to Fed.R.App.P. 43(c)(1).

John Ohanian, Los Angeles, Cal., for plaintiff-appellant.

Nancy E. Wever, San Francisco, Cal., for defendant-appellee.

Before SNEED, REINHARDT and BRUNETTI, Circuit Judges.

REINHARDT, Circuit Judge:

Martha Stewart appeals from the district court's order of summary judgment affirming the Secretary of Health and Human Services's denial of Stewart's application for disability insurance benefits and supplemental security income. We reverse the decision of the district court and remand the case for further administrative proceedings.

## FACTS

Mrs. Stewart was born on October 27, 1940 and has completed high school. She worked as a cook or a "counter person" from 1971 to 1977, when she fractured her right hip. Her only work after this injury was as a reproduction clerk for two months, later in 1977 or 1978. She applied for disability insurance benefits and supplemental security income benefits ("benefits") on February 5 and January 28, 1986, respectively, alleging that she has been unable to work since October 1, 1982 due to back and hip problems. She later added right knee pain and right shoulder pain to her list of disabling conditions.

In May 1982, Dr. Page, one of Stewart's treating physicians, opined that Stewart was "temporarily totally disabled for at least six months." He recommended that arthroscopy be performed on Stewart's right knee, and that she undergo a total right hip replacement. Stewart underwent the replacement on October 25, 1982. Dr. Page again examined Stewart on November 29, 1982. She told him that she could only sit for short periods of time because of pain in her knee. She also said that her knee pain was making it difficult for her to walk.

Dr. Page next examined Stewart on April 4, 1983, when she again complained about chronic pain and indicated that her right knee continued to give way. She indicated that she could only sit for 5 minutes, and that she could only walk one block. Stewart was examined again by Dr. Page on May 2, 1983. His report indicates that she had recently undergone the suggested arthroscopy on her right knee and stated that "[s]he is getting along quite well in reference to her hip and she has no pain with an excellent range of motion. Her right knee is somewhat improved since the arthroscopy." In a report dated January 4, 1984,

Dr. Page stated that Stewart has "chronic constant pain in her right knee which is aggravated by prolonged sitting, standing or activity."

Stewart was examined by Dr. Nabil Kahlil at a family practice clinic on February 18, 1986 and June 6, 1986. He indicated that she was being treated for back and leg pains as well as night cramps. At Dr. Kahlil's request, Stewart was examined by Dr. Charles Bosley, an orthopedic surgeon. Dr. Bosley indicated that Stewart's chronic back pain would likely continue and that she should pursue conservative forms of treatment.

At the administrative hearing held on December 3, 1986, Stewart testified that she had not worked since 1977 or 1978. She testified that she suffers from pain in her back, right knee, and right shoulder on a daily basis. She stated that she has had pain in her back and right knee since 1977 and that her shoulder pain began in 1982. Because of her pain, she testified, she can only sit or stand for 5 minutes. Stewart also testified that because of her pain she needed to prop her right leg on a stool when seated and that it is more comfortable for her to elevate both. Furthermore, she testified that she spends about 4 hours lying down between 8:00 a.m. and 5:00 p.m., and that while her pain medication helps relieve her pain, it makes her drowsy. She testified that she can walk two blocks slowly and that she has been using a cane for the past six months. She said that she can lift 10 pounds once in a while.

Rita Schafer, a vocational expert, testified at the administrative hearing. She stated that Stewart's previous work as a "counter person" would be classified as semi-skilled and light.[1] Her work skills would be transferable to other food preparation jobs, such as sandwich and food preparer, food tray preparer and cafeteria

---

1. 20 C.F.R. § 416.967(b) (1988) defines light work as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or pulling of arm or leg controls. To be con-sidered capable of performing a full range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

worker. In response to the initial hypothetical question posed by the ALJ, the vocational expert testified that these jobs are commonly available in the Los Angeles area and can be performed by an individual with Stewart's education and work experience. The initial hypothetical question assumed a person who needs to change positions every 5 minutes, who can not reach constantly, who can not lift over 10 pounds, who can not walk more than 2 blocks at a time, and who experiences emotional problems which prevent performance of complex tasks or dealing with the public.

On March 12, 1987, the ALJ issued his decision. He concluded that Stewart could not perform her past work as a cook and "counter person". However, relying on the response to the initial hypothetical question, he also found that Stewart could still engage in other substantial gainful activity and thus was not disabled. He determined that she could perform work which did not require heavy lifting, prolonged standing, and repetitive bending and stooping, but could otherwise engage in sedentary work.[2] The ALJ concluded that Stewart's "allegations of severe pain and physical limitations are credible only to the degree that those symptoms limit her to no more than sedentary work."

## DISCUSSION

The issue in this case is whether substantial evidence supports the ALJ's determination that Stewart was not disabled and whether that determination was based on the proper legal standard. *Brawner v. Secretary of Health & Human Services,* 839 F.2d 432, 433 (9th Cir.1988). Stewart contends that the ALJ erred by not crediting her testimony regarding her pain and the resulting physical limitations, and by basing his finding on the vocational expert's answer to the initial hypothetical question.

The ALJ may discount a claimant's pain testimony when the claimant fails to submit objective medical findings that establish a medical impairment that would normally produce the claimed pain. *Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir.1986); 42 U.S.C. § 423(d)(5)(A). However, if there are objective medical findings which establish a medical impairment that would normally produce *some* amount of pain, but the claimant testifies that she suffers more pain than would be expected ("excess pain"), the ALJ may discount the testimony only by making specific and justifiable findings to support his decision. *Varney v. Secretary of Health & Human Services,* 859 F.2d 1396, 1399 (9th Cir.1988) (*Varney II*); *see also Cotton,* 799 F.2d at 1407. In those findings, the ALJ must "convincingly justify his rejection" of the claimant's excess pain testimony. *Bellamy v. Secretary of Health & Human Services,* 755 F.2d 1380, 1382 (9th Cir.1985).

Here, the ALJ did not provide *any* reasons for discounting Stewart's pain testimony. He simply concluded that "[t]he claimant's allegations of severe pain and physical limitations are credible only to the degree that these symptoms limit her to no more than sedentary work activity." By not providing any reasons for justifying his decision, let alone not making specific and justifiable findings, the ALJ committed legal error.

Even were we to read the ALJ's report generously, as if it did in fact contain a reason for his decision, our conclusion would not change. While it is not entirely clear why the ALJ discounted Stewart's pain testimony, it seems likely that he did so because the testimony was not fully substantiated by objective medical evidence. Indeed, the Appeals Council noted that "[t]he Administrative Law Judge's assessment is based strictly on the objective evidence of record." The Appeals Council's statement sharply points up the

---

2. 20 C.F.R. § 416.967(a) (1988) defines sedentary work as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occassionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

ALJ's legal error. In *Cotton*, the court stated explicitly that excess pain, by definition, is "pain that is not supported by objective medical findings. If the Secretary were free to disbelieve excess-pain testimony solely on the grounds that it was not supported by objective medical findings, then the Secretary would be free to reject all excess-pain testimony. This court has rejected that interpretation of § 423(d)(5)(A)." *Id.; see also Varney v. Secretary of Health & Human Services,* 846 F.2d 581, 584 (9th Cir.1988) (*Varney I*); *Gallant v. Heckler,* 753 F.2d 1450, 1452, 1454–55 (9th Cir.1984).[3]

For the above reasons, the ALJ erred in disregarding Stewart's excess pain testimony and we must accept that testimony as true. *Varney II,* 859 F.2d at 1401.

Stewart next contends that the initial hypothetical question posed by the ALJ to the vocational expert did not accurately reflect her impairments. The ALJ initially asked the vocational expert whether jobs were available that could be performed by a person with the specific limitations described *supra* at page 742. These limitations did not include those based on the excess pain testimony. In response to the initial hypothetical question, the vocational expert testified that a person with the specified limitations, and having Stewart's work background, age, and education, would be able to perform several different jobs which exist in significant numbers in the Los Angeles area.[4]

■■■■ As discussed above, the ALJ erred in discounting Stewart's excess pain testimony. Accordingly, the ALJ's omission of claimant's excess pain and the resulting physical limitations from the initial hypothetical question rendered the answer to that question non-probative. Accordingly, the vocational expert's answer to the initial hypothetical question cannot constitute substantial evidence to support the ALJ's decision, and the decision must be vacated. *Varney I,* 846 F.2d at 585; *Gallant,* 753 F.2d at 1456.[5] Moreover, in this case the record affirmatively establishes that Stewart is entitled to benefits. The record here has been fully developed.

---

**3.** Stewart testified that, because of pain, she needed to elevate one leg; she added that she felt "more comfortable" if she elevated both. However, the ALJ discounted Stewart's testimony because "there [was] no recommendation from any medical source" that she elevate one or both legs. When Stewart requested review of the ALJ's decision, she submitted additional medical reports which stated that she needed to keep her right leg elevated. The Appeals Council decided that the reports did not warrant reversal of the ALJ's decision, because the reports did "not contain objective findings to support pain and discomfort that would require [Stewart's] leg to be elevated." However, as we have already discussed, a claimant's excess pain testimony may not be discounted merely because the objective medical evidence does not support the full amount of pain the claimant testifies she suffers. The medical record fully supports Stewart's claim that her leg causes her at least some degree of pain. Accordingly, both the Appeals Council and the ALJ erred in discounting Stewart's excess pain testimony solely because it was not supported by objective medical findings.

**4.** It is this answer that the Secretary relies on to support the ALJ's conclusion that Stewart can still engage in substantial gainful activity; he contends that the answer provides the necessary substantial evidence. The ALJ later supple-

mented the hypothetical question by adding an additional limitation. The supplemented question elicited a different response from the vocational expert. See discussion at page 744, *infra.*

**5.** Although the ALJ noted that the Secretary's Medical–Vocational Guidelines, 20 C.F.R. Part 404, subpart P, Appendix 2 (the grids), would "direct" a finding that Stewart was not disabled, the ALJ applied the correct methodology when he based his conclusion on the vocational expert's testimony and used the grids only as additional support. In cases such as Stewart's, the ALJ is not free to determine the disability issue by a mechanical application of the grids. The grids describe only major functional and vocational patterns and cannot be relied upon if they fail to accurately describe a claimant's particular limitations, including excess pain. *See, e.g., Varney I,* 846 F.2d at 585. While the ALJ should use the grids as a guideline when a claimant suffers from both exertional and nonexertional limitations, 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e)(2); *Desrosiers v. Secretary of Health & Human Services,* 846 F.2d 573, 577 (9th Cir.1988), the ALJ may not use the grids alone to deny benefits when the claimant's nonexertional impairments reduce his ability to work. *See, e.g., Bellamy v. Secretary of Health & Human Services,* 755 F.2d 1380, 1383 (9th Cir.1985). Rather, in such cases, denial of benefits must be based, as here, on the testimony of a vocational expert.

*Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir.1986). When the ALJ and Stewart's counsel each added to the initial hypothetical question the claimant's pain and its physical consequences (namely that the claimant must keep one leg elevated) the vocational expert testified that there were no jobs that such a claimant could perform.[6] In light of the above, we REVERSE the decision of the district court and the case is REMANDED with instructions that it be returned to the Secretary for the award of benefits.[7] *Varney II*, 859 F.2d at 1401; *Hoffman v. Heckler*, 785 F.2d at 1425.

REVERSED AND REMANDED

SNEED, Circuit Judge, concurring separately:

I concur in Judge Reinhardt's opinion because the law of this circuit requires that I do so.

My difficulty with the case primarily has its origin in the manner in which this circuit deals with "excess pain" cases. These cases raise three substantial issues. The first is whether Congress has authorized the rejection of a requirement that excess pain be supported by objective medical findings. The second is that, if Congress has authorized this circuit's approach to excess pain, under what, if any, circumstances will specific and justifiable findings exist that will justify a rejection of an excess pain claim by an ALJ. Finally, there is the issue whether our practice of directing that benefits be paid, upon our finding that the claim of excess pain has not been justifiably rejected, is proper.

Turning to the first issue, in 1984, Congress amended 42 U.S.C. § 423(d)(5)(A) (Supp. IV 1986), to read as follows:

An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require. An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

To read the language is to suspect that an untidy compromise was reached that does not satisfactorily resolve the first issue described above. Its enactment was in response to what Congress thought were administrative abuses in this area by the Reagan administration. Both Senators Moynihan and Levin spoke of the role of pain in determining disability. Senator Moynihan said, "[q]uite often an individual may suffer from excruciating, debilitating pain that is impossible to measure objectively. As

---

**6.** More accurately, the ALJ's hypothetical question assumed that the claimant must keep one leg elevated, while Stewart's counsel's hypothetical question assumed, *inter alia,* that the claimant must elevate both legs. However, the difference is inconsequential, because even though the latter question assumed a claimant with a greater limitation, the vocational expert's answer to both hypothetical questions was the same: there were no jobs that a claimant with either type of limitation could perform.

**7.** If there is any dispute as to whether Stewart was disabled before her disability insured status ended, the Secretary may address that issue on remand. The answer to that question, of course, has no effect on Stewart's entitlement to supplemental security income benefits.

Given our disposition of the case, we need not consider Stewart's other contentions of legal error.

yet, SSA has no guidelines for the evaluation of subjective evidence of pain, in determining disability." 130 Cong.Rec. 13,234 (1984). Senator Levin said

> "[the] pain standard does not require evidence or a finding of a medical condition as a cause of the pain, because we recognize that an underlying medical condition cannot always be identified. [But we do not] take the position that benefits should be granted on the subjective evidence of the disabled individual alone. Our pain standard would require medical findings of the presence of pain, without the need to show a medical condition causing the pain.

130 Cong.Rec. 13,237 (1984).

I conclude that the 1984 amendment can be read to justify our approach to the excess pain issue, but that it need not be so read. On the other hand, the observations of Senators Moynihan and Levin support our treatment of the excess pain issue.

My reluctance to embrace wholeheartedly the treatment of this issue is rooted in my belief that it is extremely difficult for the Secretary to refute successfully an excess pain claim. Thus, in answer to the second issue set forth above, I am hard-pressed to describe what showing the Secretary must make to refute an excess pain claim. It is possible, of course, for the Secretary to enlist the investigatory resources of the FBI to ascertain the genuineness of these claims. This does not strike me as a reasonable course of action. Nor does the creation of a private corps of investigators by the Secretary appear to be a desirable option. While it is possible for the ALJ to find that the excess pain claim is not credible on the basis of the medical evidence *and* his evaluation of the claimant's truthfulness, such a finding might be considered as inconsistent with our excess pain doctrine.

In this opinion we say that "The ALJ must 'convincingly justify his rejection' of the claimant's excess pain testimony." While it is perhaps arguable that this apparently insurmountable standard is no different from that which this court has always employed, it is a fact that our standard has experienced both adjectival and adverbial enhancement. In *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983), we required the ALJ to make a "specific finding" regarding a claimant's pain. Now we require that the Secretary make a specific finding to justify his disbelief of a claimant's pain testimony. *See, e.g., Gamer v. Secretary of HHS*, 815 F.2d 1275, 1279 (9th Cir.1987); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir.1985); *Green v. Heckler*, 803 F.2d 528, 532 (9th Cir.1986); *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir.1986) (per curiam). Adjectival enhancement appeared in *Varney v. Secretary of HHS*, 859 F.2d 1396, 1399 (9th Cir.1988) (*Varney II*), when we stated that the finding of the ALJ must be specific and justifiable. In *Bellamy v. Secretary of HHS*, 755 F.2d 1380, 1382 (9th Cir.1985), and in our opinion today, we employed adverbial enhancement when we faulted the ALJ because he "did not convincingly justify his rejection" of the pain testimony. The appearance of "convincingly" suggests that its companion adverb "clearly" will soon follow. Perhaps these adjectives and adverbs add nothing to the burden of the Secretary; but, if so, their presence is "clearly and convincingly unjustified."

The final question has to do with proper disposition of a case in which the ALJ has failed to carry his burden, whatever it may be, with respect to "excess pain" claims. Presently the practice is to direct the Secretary to pay the disability payments to the claimant. This deprives the Secretary of the opportunity to try again to meet his burden. The determination of whether this is an appropriate response may well turn on whether one believes that the Secretary's burden ever can be successfully carried. If it cannot be, as I suspect is the case, it does little good to remand the case to the Secretary. On the other hand, were it possible for the Secretary to carry his burden, a remand would be entirely proper. Inasmuch as the remand in this case is with the direction that the benefits be awarded, and because I am dubious about the Secretary ever being able to rebut an excess

pain claim satisfactorily, I concur in that portion of the opinion as well.