**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KAREN LYNETTE LAMBERT,
        *Plaintiff-Appellant*,

v.

ANDREW M. SAUL, Commissioner of
Social Security,
        *Defendant-Appellee.*

No. 19-17102

D.C. No.
2:18-cv-02122-
CKD

OPINION

Appeal from the United States District Court
for the Eastern District of California
Carolyn K. Delaney, Magistrate Judge, Presiding

Argued and Submitted August 12, 2020
San Francisco, California

Filed November 17, 2020

Before: Susan P. Graber and Daniel A. Bress, Circuit
Judges, and Robert T. Dawson,* District Judge.

Opinion by Judge Bress

---

*The Honorable Robert T. Dawson, United States District Judge for
the Western District of Arkansas, sitting by designation.

## SUMMARY[**]

### Social Security

The panel vacated the district court's judgment affirming the denial of claimant's application for disability benefits under the Social Security Act, and remanded with instructions to remand to the administrative law judge ("ALJ") for further proceedings.

A Social Security ALJ found claimant disabled beginning June 1, 2005. The Commissioner of the Social Security Administration ("SSA") conducted periodic continuing disability reviews, and determined that claimant's disability ended January 1, 2015.

After this court issued *Bellamy v. Secretary of Health and Human Services*, 755 F.2d 1380 (9th Cir. 1985) (holding that a claimant's prior disability determination entitled claimant to a presumption of continuing disability), the SSA interpreted then-recent amendments to the Social Security Act as foreclosing any presumption of continuing disability. The panel held that it must defer to the SSA's intervening interpretation of the statute, which was a reasonable one. The panel held, therefore, that there was no presumption of continuing disability under the Social Security Act. The panel concluded that the ALJ did not err in evaluating, without any such presumption, the SSA's determination that the claimant was no longer disabled.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the ALJ erred in failing to articulate sufficient reasons for refusing to credit claimant's testimony about the severity of her medical condition. Here, the ALJ did not identify the specific testimony that he discredited, and did not explain the evidence undermining it. The panel held that the ALJ was required to do more than was done here, which consisted of offering non-specific conclusions that claimant's testimony was inconsistent with her medical treatment. Finally, the panel held that the ALJ's error was not harmless.

## COUNSEL

John V. Johnson (argued), Chico, California, for Plaintiff-Appellant.

Shea L. Bond (argued) and Allison J. Cheung, Special Assistant United States Attorneys; Deborah Lee Stachel, Regional Chief Counsel; McGregor W. Scott, United States Attorney; Social Security Administration, San Francisco, California; for Defendant-Appellee.

## OPINION

BRESS, Circuit Judge:

We address in this case a question that has caused confusion in our Social Security disability benefits cases: whether a claimant's prior disability determination entitles her to a presumption of continuing disability. We recognized such a presumption in *Patti v. Schweiker*, 669 F.2d 582 (9th Cir. 1982), and applied it most relevantly in *Bellamy v. Secretary of Health & Human Services*,

755 F.2d 1380 (9th Cir. 1985).  After *Bellamy*, however, the Social Security Administration (SSA) interpreted then-recent amendments to the Social Security Act as foreclosing any presumption of continuing disability.

We conclude that we must defer to the SSA's intervening interpretation of the statute, which is a reasonable one.  *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005); *Chevron U.S.A. v. Natural Res. Def. Council*, 467 U.S. 837 (1984).  We therefore hold that there is no presumption of continuing disability under the Social Security Act.  The Administrative Law Judge (ALJ) thus did not err in evaluating, without any such presumption, the SSA's determination that claimant Karen Lambert is no longer disabled.

The ALJ did err, however, in failing to articulate sufficient reasons for refusing to credit Lambert's testimony about the severity of her medical condition.  Under our cases, the ALJ must identify the specific testimony that he discredited and explain the evidence undermining it.  Here, the ALJ did neither.  We therefore vacate the district court's judgment and remand with instructions to return this case to the ALJ for proceedings consistent with this opinion.

I

Karen Lambert, now age 54, was employed as a deli clerk and overnight retail stocker until 2005, when she developed pain related to rheumatoid arthritis.  The pain prevented her from working.  Lambert applied for Disability Insurance Benefits, 42 U.S.C. § 401, *et seq.*, and Supplemental Social Security Income, 42 U.S.C. § 1382, *et seq.*, and an ALJ found her disabled beginning June 1, 2005.

The Commissioner of the SSA must conduct periodic continuing disability reviews of persons who receive disability benefits.  *See* 42 U.S.C. § 421(i); 20 C.F.R. § 404.1590.  As part of such a continuing review, the Commissioner, on January 6, 2015, determined that Lambert's disability had ended January 1, 2015.  Lambert sought reconsideration before a disability hearing officer, who denied reconsideration.  Lambert then requested a hearing before an ALJ.  *See* 20 C.F.R. § 404.929.

At her hearing, Lambert testified that she continues to suffer from rheumatoid arthritis, in addition to a thyroid condition, vision problems, anxiety, and depression.  She also has a bone spur in her foot, pain in her Achilles tendon, and five bulging discs in her neck and back, which make it difficult for her to walk and stand.  Despite the many medications she takes, Lambert stated that her pain is debilitating.  She asserted that she spends most of her time in her bedroom "because it's unbearable to move."

Lambert provided examples about how her medical conditions affect her daily life.  She cannot lift most items or complete certain household chores.  She sometimes relies on her daughter to help her with personal care tasks, including bathing and dressing.  She requires crutches to get to the bathroom but has trouble using them.  She drives only short distances because her knees become stiff and painful after long periods of sitting.  Because of these limitations, Lambert testified she would not be able to perform any job that required standing for extended periods, frequent fingering and handling of objects, or working in "overwhelm[ing]" situations.

Lambert also submitted medical evidence from her treating physicians.  Several of her doctors found that her rheumatoid arthritis was stable and that her joints showed

reasonable ranges of motion and minimal inflammation. But doctors also noted that Lambert reported continued pain and stiffness and displayed difficulty grasping objects. Lambert saw two podiatrists for her heel pain, and a later x-ray revealed mild thickening of the soft tissue in that area. At the recommendation of one podiatrist, Lambert underwent a surgical debridement of her Achilles tendon to remove a bone spur. Lambert also saw a pain management specialist who administered epidural steroid injections in her back, which were moderately successful in managing her disc-related pain.

Finally, the ALJ received reports from several State agency physicians on behalf of the SSA. These consultants offered opinions that differed from Lambert's self-assessment. The consultants opined that Lambert was capable of working, including work that was somewhat strenuous in nature. Dr. Sarupinder Bhangoo, who examined Lambert in October 2014, reported that Lambert "move[d] around well" and "d[id] not seem to be in pain." He concluded that Lambert could walk up to six hours, sit up to eight hours, and carry up to fifty pounds. Two other doctors reviewed Lambert's file and agreed with Dr. Bhangoo's conclusions, though they did not actually examine Lambert.

The ALJ issued his decision on August 7, 2017, without applying a presumption of continuing disability. The ALJ found that Lambert's current impairments consisted of rheumatoid arthritis, bilateral calcaneal spurs, right Achilles tendinopathy, and degenerative disc disease of the cervical spine and lumbar spine. The ALJ concluded that Lambert was not able to perform her prior work. But notwithstanding Lambert's impairments, the ALJ determined that Lambert could perform modified "light work," which includes lifting

up to twenty pounds, a "good deal of walking and standing," and "pushing and pulling of arm or leg controls." *See* 20 C.F.R. § 404.1567(b).

The ALJ noted that, in reaching this conclusion, he gave the SSA's medical consultants "little weight." Dr. Bhangoo "did not have the benefit of reviewing the other medical reports contained in the current record," and his opinion was "not consistent with the record in its entirety." The ALJ also gave "little weight" to the opinions of the two other consultants. These doctors did not personally examine Lambert, and their opinions were also "not consistent with the record as a whole."

Although the ALJ found the SSA's medical experts largely unpersuasive, he declined to credit Lambert's testimony either. According to the ALJ:

> After considering the evidence of record, I find that the claimant's current medically determinable impairment could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the objective medical and other evidence for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence.

The ALJ determined that Lambert's testimony was "less than fully consistent with the evidence" for four reasons.

First, Lambert had "not generally received the type of medical treatment one would expect for a totally disabled individual." Second, the "record reflect[ed] significant gaps in [her] history of treatment and relatively infrequent trips to the doctor for the allegedly disabling symptoms." Third, Lambert's "use of medications does not suggest the presence of impairments which is more limiting than found in this decision." And finally, "medications have been relatively effective in controlling [her] symptoms."

Lambert requested review of the ALJ's decision, but the SSA's Appeals Council denied her request. *See* 20 C.F.R. § 404.967. Lambert then filed an action in federal court challenging the denial of benefits. 42 U.S.C. §§ 405(g), 1383(c). The district court granted summary judgment for the Commissioner. This appeal followed. We "review the district court's order affirming the ALJ's denial of social security benefits de novo and will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation and quotations omitted).

II

We first address the purely legal question whether the ALJ erred in not applying a presumption of continuing disability because of Lambert's earlier, 2005 disability determination. We hold that the ALJ did not err. The SSA has interpreted later amendments to the Social Security Act to preclude such a presumption, and that reasonable interpretation warrants our deference.

A

When a claimant was previously found to be disabled and the SSA is conducting a continuing disability review, is the claimant entitled to any presumption that her disability still persists?  Our cases point in different directions.

In *Patti v. Schweiker*, 669 F.2d 582 (9th Cir. 1982), a claimant received disability benefits but the SSA determined that her disability had resolved.  We used the occasion to announce a presumption of continuing disability, holding that "a prior ruling of disability can give rise to a presumption that the disability still exists."  *Id.* at 586.  We explained that we were "unable to discern any reason why the familiar principle that a condition, once proved to exist, is presumed to continue to exist, should not be applied when disability benefits are at stake."  *Id.* at 587; *see also Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983) (explaining the operation of the presumption).

*Patti* did not purport to locate its presumption of continuing disability in any text in the Social Security Act.  Instead, for support *Patti* cited only the Fifth Circuit's decision in *Rivas v. Weinberger*, 475 F.2d 255 (5th Cir. 1973).  *See Patti*, 669 F.2d at 586–87.  *Rivas*, in turn, devised a presumption based on an offhand statement in *Hall v. Celebrezze*, 314 F.2d 686, 688 (6th Cir. 1963).  *See Rivas*, 475 F.2d at 258.  Neither *Rivas* nor *Hall* conducted any statutory analysis.  Nevertheless, various circuits around this time adopted a presumption of continuing disability in some form or another.  *See Rush v. Sec'y of Health & Human Servs.*, 738 F.2d 909, 914–15 (8th Cir. 1984); *Dotson v. Schweiker*, 719 F.2d 80, 82 (4th Cir. 1983); *Kuzmin v. Schweiker*, 714 F.2d 1233, 1237 (3d Cir. 1983); *Simpson v. Schweiker*, 691 F.2d 966, 969 (11th Cir. 1982); *Rivas*, 475 F.2d at 258.

In 1984, Congress passed the Social Security Disability Benefits Reform Act.  Pub. L. No. 98-460, 98 Stat. 1794 (1984) ("Reform Act").    The Reform Act "made comprehensive revisions in the disability program," *Bowen v. City of New York*, 476 U.S. 467, 486 n.14 (1986), and reflected a substantial overhaul of the standards and procedures for terminating disability benefits.  *See Huie v. Bowen*, 788 F.2d 698, 700 (11th Cir. 1986) ("The Act listed new standards for determining when disability benefits paid pursuant to various titles of the Social Security Act are to be terminated.").

As relevant here, the Reform Act amended the Social Security Act to include the following key passage regarding the standard for terminating benefits:

> Any determination made under this section shall be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled.

42 U.S.C. §§ 423(f), 1382c(a)(4) (1984).[1]  Section 423(f) lays out the circumstances in which the SSA can conclude that disability benefits may be terminated, such as findings of medical improvement, new techniques or evaluations that make an impairment less disabling, or a prior disability determination that was erroneous.  *See also id.* § 1382c(a)(4).  The Reform Act took effect on October 9,

---

[1] A later amendment relocated the provision in 42 U.S.C. § 1382c(a)(4) to 42 U.S.C. § 1382c(a).

1984, but Congress mandated that any determination relating to medical improvement pending judicial review as of September 19, 1984 was to be returned to the Secretary of Health and Human Services for reconsideration under the new standard.  Reform Act, 98 Stat. 1794 § 2(d)(2)(C).

Six months later, we decided *Bellamy v. Secretary of Health & Human Services*, 755 F.2d 1380 (9th Cir. 1985).  Like *Patti*, *Bellamy* was an appeal by a Social Security claimant whose disability benefits had been terminated.  The claimant's challenge seemingly should have been decided under the amended version of the statute, but we did not mention the 1984 Reform Act or analyze the new statutory provision.  Because *Bellamy* was pending judicial review as of September 19, 1984, it appears that the case should have also been returned to the Secretary of Health and Human Services for consideration under the new legal standard.  Reform Act, 98 Stat. 1794 § 2(d)(2)(C).  It is not apparent whether either party advised the court about the 1984 revisions to the Social Security Act (the case was submitted several days before the new amendments took effect).  Instead, *Bellamy* applied the "presumption of continuing disability" and held that the Secretary had "failed to offer evidence sufficient to overcome the presumption."  755 F.2d at 1381.

Following *Bellamy*, we took note of the continuing disability presumption on a few occasions.  But it appears that we never applied the presumption again in a published opinion.  Instead, and although they did not concern the issue, our later cases made unelaborated statements on whether the presumption survived the 1984 Reform Act.

In *Warren v. Bowen*, 804 F.2d 1120 (9th Cir. 1986) (per curiam), *amended on denial of reh'g*, 817 F.2d 63 (9th Cir. 1987), we considered a claimant whose benefits were

terminated for a non-medical reason (her income changed). *Id.* at 1121. We rejected the claimant's argument, grounded in *Patti*, that the claimant was entitled to a presumption of continuing disability, explaining that non-medical terminations are subject to a specific regulation that prescribes a disability presumption of only one year. *Id.* We then stated: "Appellant's argument that we should use *Patti* to second-guess the Secretary on this point was undercut by Congress's decision in 1984 to *eliminate* the presumption that *Patti* created." *Id.* (emphasis added). *See also Warren*, 817 F.2d at 64 (indicating that this was the wording used in the initial *Warren* opinion).

We discussed the presumption again in *W.C. v. Bowen*, 807 F.2d 1502 (9th Cir. 1987), a class action concerning the Secretary's enactment of a review program for termination decisions. *Id.* at 1503–04. In a footnote, *W.C.* cited *Warren* for the proposition that the 1984 Reform Act "overrule[d] the presumption of continuing disability under *Patti v. Schweiker*, 669 F.2d 582, 586–87 (9th Cir. 1982)." *Id.* at 1506 n.8.

Several months later, however, we amended *Warren* by deleting the portion of the sentence that we relied on in *W.C.* As noted, *Warren* originally said Congress in 1984 endeavored to "*eliminate* the presumption that *Patti* created." 804 F.2d at 1121 (emphasis added). In the amended opinion, we replaced "eliminate" with "codify," so that the affected sentence now reads: "Appellant's argument that we should use *Patti* to second-guess the Secretary on this point was undercut by Congress's decision in 1984 to *codify* the presumption that *Patti* created." 804 F.2d at 1121 (emphasis added). No explanation was given for this change. And no changes were made to *W.C.*, which had relied on the earlier version of *Warren*.

But the next sentences in *Warren* clarified what we meant by "codify": in light of the 1984 amendments, we explained, "[w]e must now look to the statute and the regulations for guidance," and those "support the Secretary's position" that the claimant was not entitled to a presumption of disability but was required to show disability. *Id.* In other words, *Warren* directed that the space in which the presumption had previously operated was now the subject of statute and regulation, so that courts should follow "the statute and the regulations" and not any judge-made presumption.[2] *Id.* That is why the 1984 amendments "undercut" the claimant's position in *Warren*, which sought a judge-made presumption in the face of regulations that applied in that area. *Id.*; *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1172 (9th Cir. 2008) (relying on *Warren* to reject claimant's argument that the ALJ erred in failing to apply a presumption of disability).

Most recently, we rejected a pro-claimant presumption in *Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2007), holding that, under 1996 amendments to the Social Security Act, before the claimant is considered disabled, he bears the burden of proving that substance abuse is not a material contributing factor to his disability. *Id.* at 744–45. We explained that the presumption in *Bellamy* applied only when the claimant had already been found disabled. *Id.* at 748. But *Parra* did not validate the presumption of continuing disability, nor did it address the suggestions in *Warren* and *W.C.* as to whether the presumption remained

---

[2] As the Fourth Circuit has explained, the 1984 amendments could be said to "partially codify[]" preexisting case law insofar as that in the case of termination decisions based on medical improvement, there must be "substantial evidence of medical improvement." *Rhoten v. Bowen*, 854 F.2d 667, 669 (4th Cir. 1988).

good law.  In fact, neither *Warren*, *W.C.*, nor *Parra* had
occasion to address that issue, because each case involved
different issues.  *Bellamy* thus remains our last word on the
presumption that *Patti* fashioned.

B

There was, however, a material change in the law post-
*Bellamy* that we have never considered: the SSA's
authoritative interpretation of the 1984 Reform Act as
precluding any presumption of continuing disability.

The Reform Act required that the SSA promulgate
implementing regulations through notice and comment
rulemaking procedures.  42 U.S.C. § 421(k).  The SSA
published its proposed rules on April 30, 1985, with a public
comment period through June 14, 1985.  *See* Old-Age,
Survivors, and Disability Insurance and Supplemental
Security Income for the Aged, Blind, and Disabled;
Determining Disability and Blindness, 50 Fed. Reg. 18432-
01, 1985 WL 105099, at *18432 (Apr. 30, 1985) (to be
codified at 20 C.F.R. pts. 404, 416).  Because the Act
contemplated significant changes in this area of law, the SSA
received "literally hundreds" of public submissions, which
included data, views, and other comments from a wide
variety of interested persons, organizations, and public
agencies.  *See* Supplemental Security Income; Disability and
Blindness Determinations, 50 Fed. Reg. 50118-01, 1985 WL
125771, at *50121 (Dec. 6, 1985) (to be codified at
20 C.F.R. pts. 404, 416).  The SSA "carefully consider[ed]"
these comments both in making "extensive changes" to the
proposed rules and in "reply[ing] to the issues raised in the
comments [it] received." *Id.* at *50118.

The SSA issued its final regulations on December 6,
1985, more than ten months after our decision in *Bellamy*.

*Id.* On the issue that is our focus here, the SSA's regulations essentially rehashed the language of the 1984 Reform Act, providing that termination decisions should be made "on a neutral basis—without any initial inference being drawn from the fact that an individual had previously been determined to be disabled." *Id.* at *50119; *see also* 20 C.F.R. §§ 404.1579(b)(4), 404.1594(b)(6).

The SSA also published responses to public comments, which were issued in the preamble to the final regulations. 50 Fed. Reg. 50118-01, 1985 WL 125771, *50121 ("Comments Received Following Publication of the Notice of Proposed Rulemaking").   The SSA noted that its responses to the comments were aimed at "expand[ing] and clarif[ying]" its regulations in order to "make the meaning of the rules more precise," and thereby contribute to "the uniformity and equity" with which they would be applied. *Id.*

One such response to public comments is particularly relevant here.  The SSA noted that "[s]everal commenters stated that the proposed rules did not consider a beneficiary's rights to continued benefits once on the rolls.  They felt a presumption of disability should be applied until otherwise overturned."   *Id.* at *50124.   The SSA responded unequivocally that "[t]he expressed intent of the Congress as stated in the report of the Conference Committee is that the continuing disability decision should be made on a neutral basis.   No inference should be drawn that disability continues because disability was once found to exist or that disability ends because the issue is being reviewed.   The regulatory language reflects the language used in this report." *Id.* The "report of the Conference Committee" to which the SSA referred was a House Conference Report, which stated in relevant part:

> The conferees intend that determinations of continuing eligibility should be made on a basis which is as nearly neutral as possible. The Secretary should reach conclusions on the basis of the weight of the evidence, as applied to the statutory standards specified in this amendment, and without any preconception or presumption as to whether the individual is or is not disabled.

H.R. Conf. Rep. 98-1039, 26, 1984 WL 37437, at *26 (Sept. 19, 1984). In other words, through its response to public comments, the SSA determined that a presumption of continuing disability was unavailable under the new statute.

We have never considered the legal effect of the SSA's interpretation of the 1984 Reform Act. As a three-judge panel, we are bound by circuit precedent except "where the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority." *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). This venerable principle commands our utmost respect and is central to the rule of law in appellate decision-making.

There are, however, limited circumstances in which we are permitted—and, indeed, required—to depart from it. Those circumstances include the "intervening higher authority," *id.*, of an administrative agency's authoritative and reasonable interpretation of a statute. *See, e.g.*, *Campos-Hernandez v. Sessions*, 889 F.3d 564, 568–69 (9th Cir. 2018) (deferring to an agency's later interpretation of a statute when the earlier judicial decision did not hold that the agency's interpretation was unambiguously foreclosed). Whether such an intervening agency interpretation can

overcome our prior interpretation of a statute depends, in turn, on whether we regarded the statute as unambiguously compelling our interpretation.

The Supreme Court's decision in *Brand X* is the guiding precedent. There, the Court held that "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." 545 U.S. at 982.

On various occasions, we have relied on the principle of *Brand X* to recognize that an agency's intervening interpretation of a statute commanded deference in the face of a contrary circuit precedent. *See Betansos v. Barr*, 928 F.3d 1133, 1136 (9th Cir. 2019); *Campos-Hernandez*, 889 F.3d at 568–69; *Ctr. for Biological Diversity v. Zinke*, 900 F.3d 1053, 1063–64 (9th Cir. 2018); *Garfias-Rodriguez v. Holder*, 702 F.3d 504, 516 (9th Cir. 2012) (en banc); *Gonzales v. DHS*, 508 F.3d 1227, 1237–39 (9th Cir. 2007); *Metrophones Telecomm., Inc. v. Glob. Crossing Telecomms., Inc.*, 423 F.3d 1056, 1061 (9th Cir. 2005), *aff'd*, 550 U.S. 45 (2007); *Skranak v. Castenada*, 425 F.3d 1213, 1220 (9th Cir. 2005).

*Brand X* applies here because neither *Bellamy* nor any of our past precedents held that a presumption of continuing disability "follows from the unambiguous terms of the statute." *Brand X*, 545 U.S. at 982. In fact, and as we noted above, our prior cases never purported to locate the presumption of continuing disability in any statutory text. Because "[w]e did not mention" the Reform Act in *Bellamy*, we "thus could not have offered an interpretation that 'follows from [its] unambiguous terms.'" *Metrophones*, 423 F.3d at 1065 (citing *Brand X*, 545 U.S. at 982). The

question then becomes whether the SSA's interpretation of the Reform Act, as set forth in its response to public comments, is entitled to *Chevron* deference. We conclude that *Chevron* deference applies here, so that the SSA's authoritative interpretation of the Social Security Act displaces our prior precedents on the issue of a presumption of continuing disability.

The SSA is charged with administering the Social Security Act, a complex statute. 42 U.S.C. §§ 405, 421, 423. The Supreme Court has explained that "[t]he statute's complexity, the vast number of claims that it engenders, and the consequent need for agency expertise and administrative experience lead us to read the statute as delegating to the [SSA] considerable authority to fill in, through interpretation, matters of detail related to its administration." *Barnhart v. Walton*, 535 U.S. 212, 225 (2002). "We give deference to an agency's interpretation of statutes . . . it is charged with administering." *Am. Fed'n of Gov't Emps. v. FLRA*, 204 F.3d 1272, 1274–75 (9th Cir. 2000). Here, there is no dispute that the SSA's interpretation of the 1984 amendments brought to bear its "longstanding, technical expertise" in administering the Social Security Act. *Larson v. Saul*, 967 F.3d 914, 926 (9th Cir. 2020); *see also Astrue v. Capato ex rel. B.N.C.*, 566 U.S. 541, 558 (2012) (according *Chevron* deference to SSA's interpretation of Social Security Act); *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) (same).

The relevant agency action at issue here—a response to a public comment provided in the course of a substantial notice and comment rulemaking and included in the preamble to the SSA's regulations—is the type of agency action that can merit *Chevron* deference. In this case, Congress has clearly "delegated authority to the agency

generally to make rules carrying the force of law," and the SSA provided formal responses to public comments "in the exercise of that authority" and using "formalized procedures" in a large rulemaking. *Sierra Club v. Trump*, 929 F.3d 670, 692 (9th Cir. 2019) (quotations omitted). The Supreme Court and our court have applied *Chevron* deference to agency interpretations made through such processes and in this form. *See Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 714–15 (1985) (citing *Chevron* and explaining that "[t]he FDA's statement [responding to public comment] is dispositive on the question of [Congress and the FDA's] implicit intent to pre-empt"); *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 698–99 (1991) (citing agency's responses to comments as "warrant[ing] deference from this Court" under *Chevron*); *see also Safer Chemicals, Healthy Families v. U.S. E.P.A.*, 943 F.3d 397, 422 n.17 (9th Cir. 2019) (evaluating interpretation in regulatory preamble under *Chevron*). Here, because the SSA's interpretation "represents the agency's considered judgment after notice and comment, industry input and interagency consultation," *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1177 n.9 (9th Cir. 2016), *Chevron* deference is available.[3]

Applying *Chevron*'s "familiar two-step analysis," *Betansos*, 928 F.3d at 1139, we conclude that the SSA's interpretation of the 1984 Reform Act requires deference. The text of the Reform Act is strongly suggestive of the SSA's interpretation, but Congress did not specifically

---

[3] Because the SSA's responses to public comments are eligible for *Chevron* deference, we have no occasion to determine whether the SSA's regulations themselves, which merely parrot the statutory text in the 1984 Reform Act, are entitled to *Chevron* deference. *See N. Cal. River Watch v. Wilcox*, 633 F.3d 766, 780 (9th Cir. 2011).

reference any "presumption." Some courts concluded that the Reform Act did not "clearly overturn" the presumption of continuing disability because "[a]n inference is not the same as a presumption." *Medina v. Colvin*, 2015 WL 5448498, at *10 (N.D. Cal. Aug. 21, 2015); *see also Palacios v. Astrue*, 2012 WL 601874, at *3 (C.D. Cal. Feb. 23, 2012). And the public comments that prompted the SSA's authoritative interpretation of the 1984 Reform Act likewise arose from evident uncertainty as to whether any presumption of continuing disability should be included in the implementing regulations. 50 Fed. Reg. 50118-01, 1985 WL 125771, at *50124. Under all these circumstances, and although the statutory wording strongly supports the SSA's interpretation, it may be that Congress has not "directly spoken" to the issue. *Betansos*, 928 F.3d at 1139.

Nevertheless, there is no doubt the SSA's interpretation is a reasonable one, requiring our deference. *See Brand X*, 545 U.S. at 982; *Gonzales*, 508 F.3d at 1241. The Reform Act's wording—that a disability determination must be made "on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled," 42 U.S.C. §§ 423(f), 1382c(a)(4)—easily permits the SSA's interpretation that a presumption of continuing disability is no longer allowed or justified. As we explained in *Warren*, "[w]e must now look to the statute and the regulations" in this area of law. 804 F.2d at 1121.

Our holding aligns with those from other circuits that have confronted the issue directly, all of which have held that there is no presumption of continuing disability after the 1984 Reform Act. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 n.1 (6th Cir. 1994) (per curiam);

*Wilkerson v. Sec'y of Health & Human Servs.*, 996 F.2d 1220 n.4 (7th Cir. 1993) (unpublished); *Rhoten v. Bowen*, 854 F.2d 667, 669 (4th Cir. 1988).[4]

III

Although the ALJ correctly performed his review without applying a continuing disability presumption, the ALJ did err in failing to provide sufficient reasons for rejecting Lambert's testimony.

We will "disturb the Commissioner's decision to deny benefits 'only if it is not supported by substantial evidence or is based on legal error.'" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). We therefore "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* But the ALJ must provide sufficient reasoning that allows us to perform our own review, because "the 'grounds upon which an administrative order must be judged are those upon which the record discloses that its

---

[4] The Third and Fifth Circuits appear to apply some form of a presumption, though they have not directly addressed the 1984 Reform Act. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1274 n.7 (3d Cir. 1987); *Loza v. Apfel*, 219 F.3d 378, 395–96 (5th Cir. 2000). The Eighth and Eleventh Circuits have recognized that the Reform Act is in tension with a presumption of continuing disability but have yet to resolve the issue. *See Polaski v. Heckler*, 751 F.2d 943, 946 (8th Cir. 1984), *cert. granted, judgment vacated sub nom. Bowen v. Polaski*, 476 U.S. 1167 (1986) (original opinion recognizing that the continuing disability presumption "no longer stands," but eliminating this discussion in replacement opinion); *Tomaszewski v. Colvin*, 649 F. App'x 705, 705 n.2 (11th Cir. 2016) (per curiam) ("[T]he Court need not decide whether Congress overruled the presumption of continuing disability for benefit continuation cases when it enacted 42 U.S.C. § 423(f).").

action was based.'"  *Id.* at 1102 (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)).

Under our well-established case law, and where, as here, the ALJ "determines that a claimant for Social Security benefits is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015); *see also Treichler*, 775 F.3d at 1102.  This requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony."  *Treichler*, 775 F.3d at 1102 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)); *see also Brown-Hunter*, 806 F.3d at 493.

The ALJ's decision does not meet the requirements set forth in our cases and does not permit meaningful review. The ALJ noted generically that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the objective medical and other evidence for the reasons explained in this decision."   But this "boilerplate statement" by way of "introductory remark," which is "routinely include[d]" in ALJ decisions denying benefits, did not "identify what parts of the claimant's testimony were not credible and why." *Treichler*, 775 F.3d at 1103.

As noted above, the ALJ also provided four high-level reasons as to why Lambert's allegations were "less than fully consistent with the evidence."  But this brief discussion was likewise insufficient.  "We cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting

[Lambert's] pain testimony where, as here, the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Brown-Hunter*, 806 F.3d at 494. Our cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits. *See Treichler*, 775 F.3d at 1103 ("[T]he ALJ's analysis need not be extensive."). But our precedents plainly required the ALJ to do more than was done here, which consisted of offering non-specific conclusions that Lambert's testimony was inconsistent with her medical treatment. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (explaining that we may not "take a general finding—an unspecified conflict between [c]laimant's testimony . . . and her reports to doctors—and comb the administrative record to find specific conflicts"); *see also, e.g.*, *Brown-Hunter*, 806 F.3d at 493–94; *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009). Although the ALJ did provide a relatively detailed overview of Lambert's medical history, "providing a summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Brown-Hunter*, 806 F.3d at 494.[5]

The district court attempted to fill in the ALJ's reasoning, citing portions of the record suggesting that Lambert's subjective pain complaints were not credible. For example, the district court cited evidence about how Lambert was able to "perform daily activities including

---

[5] The Commissioner argues that the "clear and convincing reasons" standard is too high but acknowledges that our cases clearly set forth that standard. Nor does the Commissioner suggest an alternative standard. Regardless, in this case, given the limited nature of the ALJ's explanations, the result would be the same under a more lenient standard.

shopping, performing household chores, managing money, reading, personal care, and operating a motor vehicle," and compared this to specific aspects of the medical evidence. The district court's efforts to shore up the ALJ's decision, while understandable, are unavailing. "Although the inconsistencies identified by the district court could be reasonable inferences drawn from the ALJ's summary of the evidence, the credibility determination is exclusively the ALJ's to make," and "[w]e are constrained to review the reasons the ALJ asserts." *Brown-Hunter*, 806 F.3d at 494 (quotations and emphasis omitted).

Nor was the ALJ's error harmless. An error is harmless only if it is "inconsequential to the ultimate nondisability determination." *Id.* (quotations omitted). Because the ALJ did not provide enough "reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence," we cannot treat the error as harmless. *Treichler*, 775 F.3d at 1103; *see also Brown-Hunter*, 806 F.3d at 494–95. Treating the error as harmless would also be problematic on this record. The ALJ agreed that Lambert was at least impaired to the point that she could not perform her past work. And Lambert's testimony held even greater potential after the ALJ rejected as "not consistent with the record" the opinions of several medical experts who believed that Lambert was capable of more strenuous work.

* * *

We vacate the judgment of the district court with instructions to remand to the ALJ for proceedings consistent with this opinion. We have no occasion to reach Lambert's other assignments of error, as the record may change on

remand. We express no opinion as to whether Lambert is entitled to disability benefits.

**VACATED AND REMANDED.**